INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V. JOHN RYAN.

No. 7008.

1. **Fellow Servant.**—A carpenter employed in a bridge gang after his day's work was done was sitting in a car of the railway company writing a letter. He slept in this car. While so engaged a collision occurred with a switch engine through the negligence of an employe in charge of it. In the collision the carpenter was injured. *Held,* that the injury was from negligence of a fellow servant.

2. **Liability of Railway Company—Fellow Servant.**—Prior to the Act of the Twenty-second Legislature, approved March 10, 1891 (Gen. Laws 1891, p. 25), the rule

in this State on the subject announced in Robinson v. Railway, 46 Texas, 550; Dallas v. Railway, 61 Texas, 202; and Railway v. Welch, 72 Texas, 298, was, that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of another, and it seems impossible therefore to hold that the servant contracts to run the risks of the negligent acts or omissions on the part of one class of servants and not those of another.

3. Same—Improper Charge.—The court having defined the relations of fellow servants, added the following: "Provided there is a natural or necessary connection between the different classes of service such as necessarily brings the servants in contact with each other in the prosecution of their work, however dissimilar their occupations may be." This qualification was error, and its correction having been refused is ground for reversal.

4. Employe.—A carpenter engaged in a bridge gang working only in stated hours and having his meals and sleeping in cars provided for employes, must be considered as an employe during the hours when not at labor and in the car provided for him for sleeping, etc.

5. Case Adhered to.—Harrell v. Mexico Cattle Company, 73 Texas, 616, adhered to.

APPEAL from Frio. Tried below before Hon. D. P. MARR.

This is an appeal from a judgment for $5000 for personal injuries suffered by Ryan in a collision while an employe of the appellant. The opinion gives the facts.

*Barnard & Green*, for appellant.—1. The pleadings and the evidence show that the plaintiff was injured by a fellow servant. The defendant's exceptions should have been sustained or its charges given; but failing in that, the court should have set aside the verdict of the jury. Railway v. Welch, 72 Texas, 298; Railway v. Watts, 63 Texas, 549; Railway v. Rider, 62 Texas, 267; Railway v. Harrington, 62 Texas, 597; Dallas v. Railway, 61 Texas, 196.

2. One employed by a railway company, operating as lessee without authority of statute a railway belonging to another corporation, can not recover of the latter corporation for injuries sustained by the negligence of a fellow servant employed by the former. Railway v. Culberson, 72 Texas, 375.

No brief for appellee reached the Reporter.

HOBBY, PRESIDING JUDGE, *Section A.* — The appellee, who was plaintiff in the District Court, brought this suit against the appellant to recover damages for injuries to his person inflicted by reason of the negligence of appellant's servants. The original petition was filed on August 9, 1888. On the 26th October, 1888, the cause of action was more fully stated by amendment. A trial was had, resulting in a verdict and judgment for the plaintiff for the sum of $5000.

The defendant has appealed from this judgment and assigned errors, the most important of which will be considered without regard to the form in which they are presented.

The questions raised on this appeal will be better understood when considered in the light of the facts established by the plaintiff's evidence, from which we quote as follows:

"On the night of the 16th of August I was sitting at the table in the sleeping car used by the bridge gang number 76, to which I belonged on that day, and for about thirteen or fourteen months prior thereto, off and on. I was in the employ of the International & Great Northern Railway Company as a carpenter. I was employed by the day at $2.25. Mr. Sumpf was the foreman of the gang. We had been doing some work at Tuna Station, and were on our way to Palestine to do some work for the defendant. We had orders to stop at the San Antonio yard for the purpose of doing some work in raising one of the platforms of the railway company. I had been down town during the evening of that day, and had returned to the bridge gang car, and was writing a letter at the table in the said car at about 9:30 on the night of the 16th August, 1887. Our cars were on the sidetrack at San Antonio, to which place we had come by direction of Mr. Bowers at about 6 o'clock that evening. The switch engine was moving up and down the main track by the side of us. While sitting at the table the collision occurred." [The plaintiff here gave an account of the manner in which he received the injuries.]

"I went to the hospital the next morning; staid there eighteen days; was discharged, and immediately rejoined the bridge gang number 76, then working at Troupe." [The plaintiff here described the painful effects of his attempts to work as before, caused by the injuries.]

"Before I was injured, under my employment my hours of work were from 7 until 12 and from 1 till 6. The day's work consisted of ten hours of labor. My time was my own after 6 o'clock p. m. every day, and I paid for my board at the rate of 66⅔ cents per day. I was paid only for the number of days and hours that I had worked during the month. I had no contract to work any particular length of time for the railway. My work for the day was done at the time I was struck. I could have quit the employment of the railway at 6 o'clock that evening.

"The cars that struck ours on that night were box cars, which we never did use or have any connection with; we used flat cars in our work. Mr. Hume never had the control of our gang; they were under Mr. A. L. Bowers, who was the superintendent of bridges and buildings. Mr. Hume had sometimes furnished us with cars by order of Mr. A. L. Bowers, but Mr. Hume and Mr. Bowers were independent of each other in the control of their departments. Mr. Hume was gen-

eral superintendent of transportation. The man in charge of the cars that collided with the cars on which I was belonged to Mr. Hume's department, and we to the department under Mr. Bowers. There were no duties in common between the employes of the two departments. Their work was separate and apart."

On cross-examination he testified: "At the time I was injured in the International yard I had been employed off and on for about thirteen or fourteen months by the company, and had been with Mr. Sumpf's bridge gang during the time that I was so employed. We expected to go to work in the International & Great Northern Railway Company's yard the next morning, raising a platform. It was the duty of the bridge gang under Mr. A. L. Bowers, who was superintendent of this department of the road, to move up and down the road, repairing bridges, depots, platforms, turntables, etc., whenever it was necessary. As long as I belonged to the bridge gang I slept and lived in the cars provided and furnished by the railway company for our use and occupation; this was my only home. I was entitled to sleep in the car at the end of each day's work. When I joined the bridge gang I knew I would have to sleep in these cars and to await the orders of Mr. A. L. Bowers, the superintendent. The orders were given by Mr. Bowers to Mr. Sumpf. I expected to go to work the next day as usual with the gang, and notwithstanding the fact that I was hurt, on the next morning, to-wit, August 17, 1887, I went to the place where the gang was at work for the purpose of joining them in their work. * * * My day's work had been done on August 16 when I was hurt, but I had not quit the employment of the railway company, nor had they discharged me from their service, but my time was my own after 6 o'clock that evening, and was my own when I was struck. When I was injured my time was my own, and I was attending to my own affairs, engaged in writing a letter. I was not then working for the company. I considered my time ended that evening at 6 o'clock. I was not bound to work longer, nor the company to keep me."

The plaintiff testified further, that the men who caused the accident were employed in the transportation department by Mr. Hume, the master of transportation, but were in the employment of the same company and paid monthly; they were paid only in that manner. He also testified, that when he entered into the company's service he knew he would be frequently placed on the sidetrack at different stations; had been so placed many times prior to this accident, and other cars had collided with the car which he was in previously, but never so hard as on this occasion. He knew there was a possibility of such an accident, but knew, also, that it would not occur once in a thousand times, etc.

It is unnecessary to recite the testimony as to the character of the injuries sustained by appellee.

The master of transportation (Hume) testified, that H. O. Stanberry was working in the San Antonio yards on the night of the 16th of August, 1887, as switchman, and was employed in that capacity by him. It was proved that the collision was the result of his negligence.

Under these facts, the court charged the jury, in substance, that if they believed that the plaintiff, at the time he received the injuries complained of, was not in the employment of the company, or that his employment had terminated, he would not be "a fellow servant with other parties engaged in moving and switching cars for the defendant company." This was given at plaintiff's request. The jury were instructed that an employe assumed the risk, incidental to the employment, of injury by the negligence, etc., of his fellow servants in the same general employment as long as the relation continues. The court properly instructed the jury as to who were fellow servants under the laws of this State; and that those engaged in different departments of the service of the company would be also fellow servants. But this was accompanied with the following qualification: "Provided there is a natural or necessary connection between the different classes of service such as necessarily brings the servants in contact with each other in the prosecution of their work, however dissimilar their occupation may be."

Applying the principles of law announced in the charge to the case, the jury were instructed, that "if they believed the plaintiff was injured by the negligence of the servants, etc., of the defendant, employed in the same general business, or to secure a common result for the defendant—that is, the operation of defendant's road, or keeping its property in repair for such operation, although engaged in different departments of such service and of different ranks or occupations, yet if there was a natural or necessary connection between the work or duties of plaintiff or those with whom he worked, and that of such other servants or employes causing the injury, such as necessarily or ordinarily brought them in contact with each other in the prosecution of their respective work or duties, then plaintiff would be a fellow servant with such other employes, otherwise he would not."

In this connection the defendant requested the following charge: "If you believe from the evidence that John Ryan entered into the employment of the defendant before the injury alleged in his petition, then I charge you that in so entering the employment of the defendant the said Ryan assumed the risks attendant upon said employment. And if you further believe from the evidence that the plaintiff was injured by the negligence of the switchman Stanberry or any other of the employes of the defendant company operating the cars that struck the ones in which plaintiff was at the time of the injury, then I charge you that the plaintiff can not recover in [this?] case; and it matters not whether Ryan was injured by a servant of the company of one

grade or the other.    If you believe the facts above spoken of, you will find a verdict for the defendant."

Under several assignments the question is properly presented whether the facts in the case authorized the submission of the issue to the jury, whether the appellee was in the employment of the company at the time of the collision.    And again, whether the qualification of the definition of a fellow servant above quoted announced the correct rule; and was there error in refusing the special instructions requested by the appellant.

Prior to the passage by the Twenty-second Legislature of the act defining fellow servants (approved March 10, 1891; Gen. Laws 1891, p. 25), the rule in this State on this subject, announced in Robinson v. Railway, 46 Texas, 550, and in Dallas v. Railway, 61 Texas, 202, and reluctantly adhered to in Railway v. Welch, 72 Texas, 298, is, "that the negligence of a servant of one grade is as much one of the risks of the business as the negligence of another, and it seems impossible, therefore, to hold that the servant contracts to run the risks of the negligent acts or omissions on the part of one class of servants and not those of another class."

Discussing the principle upon which it is asserted that the rule is founded—that it is calculated to make servants in a general or common employment watchful of each other and to promote carefulness in the performance of their duties—it is well suggested in this connection by the court in that case, "that if this principle be sound, it would seem to apply only to those servants whose duties bring them into juxtaposition," to afford an opportunity for the exercise of that watchfulness which it is the policy of the rule to encourage.

We think it may be inferred that it was the recognition of this principle that influenced the court's charge in confining the doctrine of fellow servants to those different classes or departments of the same service, between which there was such a connection, as brought the servants in contact or "juxtaposition."    And while the charge in this respect is sustained by the leading principle or reason of the rule itself, it is still not in accordance with the rule declared in our State. It was said in the case last cited, that "however unsatisfactory may be the reasons assigned for the doctrine, it is too well established, and its limits, in so far as the question before us is concerned, too well defined to permit us to intrench upon it."    As the court felt in that case "constrained by former opinions of the court," and "the weight of authority elsewhere," to adhere to the rule announced in the cases cited, so, too, do we feel that in this case it should be held that those operating the train which caused the injury to appellee were his fellow servants, and that the rule ought not to have been limited by the charge to those cases where there is a connection between the different grades of em-

ployment bringing the servants in contact with each other. It is proper, we think, in this connection to remark that the case of Railway v. Welch, supra, which removed any uncertainty which may have previously existed on this vexed question, had not been decided at the time of the trial of this case below.

We conclude that there was error in the general charge, as above indicated. We think, further, that the special instruction given at the appellee's request should not have been given, and that asked by the appellant ought to have been given.

There is another feature of the case of Railway v. Welch, supra, analogous to the question growing out of the charge submitting the issue to the jury whether appellee was at the time of his injury in the employment of the company. In that case the plaintiff was foreman of a bridge gang, whose duty it was to construct and repair bridges, etc. He was sleeping in a car provided by the company for that purpose, which was on a sidetrack, and was injured through the negligence of another employe of the same company, operating a freight train which collided with the car in which he was sleeping. It was held that, although not then at work for the company, he was liable to be called upon at any time to go out with his gang on duty on the road. Upon these facts, it was decided that he must be held to have been on duty at the time he was injured.

In this case we think it is evident, from the facts testified to by the appellee, that he was, in contemplation of law, in the employment of the company at the time of the collision. His presence in the car on the sidetrack at the time of the collision can be explained in no other way under the proof. It was only by reason of the fact that he was an employe of the company that he was in the car on the sidetrack at the time he was injured. We do not wish to be understood as holding that if the fact was established that his employment had terminated he could not recover in a proper case. But we mean to say, that we do not think that under the facts in this case his employment had ceased, or that he was not, in contemplation of law, at the time of the injury in the service of his employer. We think that he was in such employment.

A supplemental assignment raises the question of the sufficiency of the evidence to support the judgment, on the ground that the evidence shows that the International & Great Northern Railway was operated at the time of the injury under a lease by the Missouri Pacific Railway Company, and the appellee was, when injured, in the service of the latter company, and injured by the servants of said company. This question is not raised by the motion for a new trial. Under the authority of Harrell v. Cattle Company, 73 Texas, 616, it was held that an assignment based on grounds of the above character would not be

considered unless specified in the motion for a new trial. We do not find that this ground is set up in the motion contained in the record.

For the reasons given, we think that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 15, 1891.

Judge MARR did not sit in this case.