**MOORE et al. v. LUMBERMEN'S RECIPROCAL ASS'N. (No. 432–3863.)**

(Commission of Appeals of Texas, Section B. Feb. 27, 1924.)

1. Statutes &#9758;190—No room for judicial construction when statute is clear.

Where a statute is clear and unambiguous, there is no room for judicial construction, and the intent and meaning of statute must be determined from the language used.

2. Abatement and revival &#9758;54—Nonsurvivability of cause of action does not necessarily result from prohibition against assignment.

Though Employers' Liability Act, pt. 1, § 3 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246i), forbids assignment of cause of action for compensation for injuries to an employee, nonsurvivability does not result therefrom, especially in view of the provision of section 16 (article 5246o), providing that, if the injury results in death, the cause of action shall survive.

3. Master and servant &#9758;388—Beneficiary's right to compensation for death of employee transmissible to beneficiary's heirs.

Under Employers' Liability Act, § 8a, as amended by Acts 35th Leg. (1917) c. 103 (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15), applicable to a case arising before the enactment of Acts 38th Leg. (1923) c. 177, § E, beneficiary's right to compensation for death of an employee, which is payable independently of the question of dependency, is a vested right which the statute vests in the beneficiaries named, and is a right transmissible to the heirs of the beneficiary, which right may be administered upon as part of beneficiary's estate, in view of part 1, § 15 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246nnn), providing for redemption of liability by payment of lump sum, and part 2, § 5 (Vernon's Sayles' Ann. Civ. St. 1914, art. 5246q), the words in said section 8a "for the sole and exclusive benefit" of persons designated in the statute, meaning only that in the absence, at the death of employee, of all of those designated, no one is entitled to compensation.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Proceeding under Employers' Liability Act by Minnie Sanders for compensation for injuries, opposed by the Lumbermen's Reciprocal Association, insurance carrier. The insurance carrier brought suit to set aside the award of the Industrial Accident Board, and from the judgment setting aside the award and giving them insufficient relief Mrs. Alice Moore and others, heirs of Minnie Sanders, appealed to the Court of Civil Appeals, which affirmed the judgment (241 S. W. 1105), and the heirs of Minnie Sanders bring error. Judgments reversed, and judgment rendered in favor of the heirs.

Morris & Barnes, of Beaumont, and Coe & Combs, of Kountze, for plaintiffs in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendant in error.

HAMILTON, J. Pete Sanders was killed in the course of his employment while his employer was a subscriber, as defined in the Employers' Liability Act (Vernon's Ann. Civ. St. Supp. 1918, art. 5246—1 et seq.) and was carrying a policy of insurance with the defendant in error. Defendant in error admitted liability to Minnie Sanders, wife of Pete, upon her claim, and paid to her $5.63 for a period of 27 weeks, but withheld an equal amount for her unborn child. Checks for $5.63 each were sent to Minnie Sanders for the weeks ending July 13 and July 20, 1920, which she did not cash. The unborn child for which the 29 installments of $5.64 each were reserved was stillborn on July 20, 1920. Minnie Sanders died intestate July 21, 1920, leaving no debts owing by her estate. Her sole heirs are her father and mother, E. L. and Alice Moore, plaintiffs in error. Defendant in error refused to pay the 29

weekly payments of $5.64 each, reserved for the stillborn child, amounting to $163.56, and also refused to pay the two payments for the weeks ending July 13 and July 20th, amounting to $11.26, for which checks had been issued to Minnie Sanders but not cashed. The total amount of insurance which had accrued to the beneficiaries of Pete Sanders up to the death of his wife amounted to $326.83, of which $152.91 had been paid, leaving $174.82 unpaid.

On August 12, 1921, the Industrial Accident Board made an award adjudging and decreeing that—

"the Lumbermen's Reciprocal Association pay to the estate of Mrs. Minnie Sanders, deceased, and to its legal representatives the sum of $183.67, and that it also pay to said estate and said legal representatives weekly compensation at the rate of $11.27 per week for the period of 330⁵/₇ weeks, said weekly compensation to begin to accrue on July 22, 1920, and to be payable thereafter from week to week as each weekly payment accrues, until said period has fully expired, less attorney's fee hereinafter ordered paid to Collins, Morris & Barnes, attorneys of Beaumont, Tex."; and further ordering, adjudging, and decreeing "that the Lumbermen's Reciprocal Association pay to Collins, Morris & Barnes, attorneys of Beaumont, Tex., a fee in a sum equal to 15 per cent. of the first $1,000 and 10 per cent. of all amounts in excess of said first $1,000 paid on this award, to be paid out of weekly compensation from week to week as the same accrue."

Within 20 days after the above award was made, defendant in error gave notice to plaintiffs in error and to the Industrial Accident Board that it was unwilling to abide by the award, and filed this suit to set aside the award.

The case was tried before the court without a jury, and judgment was rendered setting aside the award of the Industrial Accident Board, but giving to plaintiffs in error judgment for $174.82, the amount of the accrued but unpaid installments of compensation at the date of the death of Minnie Sanders, with 6 per cent. interest thereon from July 21, 1920. Plaintiffs in error appealed. The Court of Civil Appeals affirmed the judgment of the trial court. 241 S. W. 1105. Plaintiffs in the trial court, appellants in the Court of Civil Appeals, petitioned for writ of error. The petition was granted.

[1-3] The only question in the case is whether or not the Court of Civil Appeals erred in holding that the liability of defendant in error to pay compensation for the death of Pete Sanders terminated with the death of his wife, Minnie Sanders, and that her right to that compensation did not descend to her heirs; that is, whether or not the right to compensation had vested in her.

Our Supreme Court granted the writ of error, "because of the importance of the question." The writ was granted on October 18, 1922. By an act of the Thirty-Eighth Legislature, 1923, c. 177, § E, the act of the Thirty-Fifth Legislature, commonly known as the Workmen's Compensation Act, was amended by adding that "the right in such beneficiary or beneficiaries to recover compensation for death be determined by the facts that exist at the date of the death of the deceased and that said right be a complete, absolute and vested one." The question, therefore, becomes important only in this case and such others as may have arisen before the 1923 amendment and are yet undetermined.

The question for determination here has never been before our courts. A similar question—that is, whether or not an award to the employee for injuries where he dies from other causes than the injuries vests in him—was decided by the Court of Civil Appeals in the case of U. S. F. & G. Co. v. Salser, 224 S. W. 557. The court held in that case that the right to compensation did not vest. That question has never been before our Supreme Court.

Courts of other jurisdictions are at variance in their holdings on the question. In England the right to compensation arising from the death of a workman passes to the personal representatives of the deceased dependent. Darlington v. Roscoe & Sons (1906) 8 W. C. C. 4. It was decided by the House of Lords that, where a dependent, under the English Compensation Laws, dies without having made claim for compensation, the legal representatives of such dependent may claim compensation, because, it was held, the right to make the claim became vested in the dependent at the time of the death of the workman, and survived to the legal representatives of the dependent. United Collieries v. Hendry (1909) 101 L. T. 129; A. C. (8th L.) 383; 2 B. W. C. C. 308. It is held by the courts of England that the right of a mother to claim compensation because of the death of her son, upon whom she was dependent, vests in her at the time of her son's death, and that the personal representatives of the mother can maintain a proceeding for such compensation, even though the mother fail to take proceedings during her lifetime. Hendry v. United Collieries, [1908] 45 Scotch L. R. 944; 1 B. W. C. C. 289. See Bradbury's Workmen's Compensation (3d Ed.) pp. 802–805.

The Supreme Court of Ohio holds that award of compensation to a dependent for the death of an employee under the Workmen's Compensation Act of that state vests in the dependent when the award is made, so that, in case of the death of such dependent, his or her personal representative is entitled to the balance, if any, remaining unpaid. State ex rel. Munding v. Industrial Commission of Ohio, 92 Ohio St. 434, 111 N. E. 299, L. R. A. 1916D, 944, Ann. Cas. 1917D, 1162.

On the other hand, the appellate court of Illinois held in the case of Matecny v. Vier-

ling Steel Works, 187 Ill. App. 448, that, when an employee dies as a result of his injury, leaving only a dependent mother, the obligation of the employer to make payments of compensation awarded her ceases upon her death and that the right to further payments does not survive and inure to the benefit of her estate. Likewise, the Supreme Court of Massachusetts holds that the weekly payment provided in the Workmen's Compensation Act of that state for the dependent of an employee killed in service comes to an end when the dependent dies, and is not a vested right passing to a legatee by will, or, in case of intestacy, going to the dependent's next of kin. In re Murphy, 224 Mass. 592, 113 N. E. 283.

The decisions of each jurisdiction are based on statutes of that particular state. There is such a variance among the provisions of the statutes and each of them so differs from our compensation statutes that not much assistance in the interpretation of our statutes can be gathered from the decisions determining the question in other states.

There is no provision of our statutes dealing expressly with the question. It devolves upon the courts to arrive at a solution of the question by an interpretation of the statute. In such interpretation, the object and purpose of the Employers' Liability Act is to be considered.

It is generally conceded that the act recognizes that damages for a personal injury sustained by an employee in the course of his employment or for death resulting from personal injury so sustained is incidental to the business; that, as a matter of justice, the resulting burden should be borne by the business, regardless of whether the fault or blame is that of the employer or of the employee; that as such incident the final incidence of the burden would be shifted to the public in the form of increased price per unit of the product or service produced or performed by the employer, occasioned by such incident, as a part of the ordinary expense of production, thus relieving the injured or killed employee and his representatives and beneficiaries from bearing all of such burden in those instances in which no recovery in the courts could be had.

Some of the opinions in such cases seem to proceed upon the theory that the "burden" to be borne by the business under the Employers' Liability Act means the burden imposed upon society, in the absence of such act, in caring for such injured employees and their dependents through charity distributing agencies. We do not concede that our Employers' Liability Act had its genesis in any such conception of relief. We think the burden designed to be taken care of under that act, in the first instance by the business to which the injury or death is an incident, and finally by the purchasers and users of the employer's products or services, means the burden occasioned by the decreased or destroyed earning power resulting from the injury or death, independently of charitable considerations. It recognizes that the injury or the death imposes a financial burden—where or upon whom it does not matter—by reason of the diminished or destroyed earning power of the injured person, and undertakes to place this burden, to the extent of the award allowed, upon the business, finally to be distributed among the members of society through their purchases at prices including the average of awards in each business as a part of the costs of production; that the award has no relation to the necessity, the poverty, or the wealth of the beneficiary, where such beneficiary is the husband or the wife is made apparent by the statute. Section 8a of the act as amended by the Thirty-Fifth Legislature, c. 103, regular session, provides that:

"The compensation provided for in the foregoing section of this act shall be for the sole and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife at the time of the injury, the wife who has not at the time of the injury without good cause and for a period of three years prior thereto abandoned her husband and the minor children, *without regard to the question of dependency.* * * *" (Italics ours.) Vernon's Ann. Civ. St. Supp. 1918, art. 5246—15.

Minnie Sanders would have been entitled to the award and to collect the compensation for the death of her husband though she had been a millionaire. This demonstrates that the act did not have its conception in the idea that the "burden" it placed, in the first instance, on the business as an incident thereof was that which society might have to bear by reason of the mere inability of the beneficiary to support himself, at least when such beneficiary is the husband or the wife. Therefore it demonstrates that the question in this case is not to be disposed of upon that theory of the act, because this is a case in which the beneficiary is the wife of the killed employee. Since her right to the award and to the money awarded is in no way connected with or dependent on her dependency or poverty, and would have been hers notwithstanding she might have been living in luxury and been possessed of great wealth, what reason can be assigned for paying it to her as long as she lived, and then denying that the right to it ever vested in her?

Defendant in error insists that the statute by its very terms prescribes those to whom the compensation shall go, and that none except those named are permitted by those terms ever to receive any of the compensation. This argument is founded on the following portion of section 8a of the act:

"The compensation provided for in the foregoing section of this act shall be for the sole

and exclusive benefit of the surviving husband who has not for good cause and for a period of three years prior thereto abandoned his wife at the time of the injury, the wife who has not at the time of the injury without good cause and for a period of three years prior thereto abandoned her husband and the minor children, without regard to the question of dependency, dependent parents and dependent grandparents and dependent stepmothers and dependent children or dependent brothers and sisters of the deceased employee. * * *"

We do not think that portion of the statute means that none except those named shall ever receive any of the compensation. We think that portion of this statute named and marked out all of those who, in the first instance, are entitled to award of compensation; that the compensation is "for the sole and exclusive benefit" of those named in the statute in the sense only that if none of those designated therein exist at the time of the death no one shall have compensation; that upon the failure of all those named in the statute no one would be entitled to compensation for the death.

But that is an entirely different question from that which arises as to whether, after one or more of the group named has been found, under the terms of the statute, to be entitled to compensation at the time of the death, the right to compensation vests in him or ends upon his death. We think the right vests in that one or in that number of the beneficiaries named in the statute which is or are entitled under the terms of the statute to the compensation at the date of the employee's death.

Our conclusion is based on the plain provision of the statute. Section 8 of the statute provides that:

"If death should result from the injury, the association hereinafter created shall pay the legal beneficiaries of the deceased employé a weekly payment equal to sixty per cent. of his average weekly wages, but not more than $15.-00 nor less than $5.00 a week, for a period of three hundred and sixty weeks from the date of the injury."

There are no conditions in that statute. It is a simple declaration of what the association shall do if death should result from the injury. Neither is there any condition imposed upon the right of the wife to the payments provided in the statute, except that she shall not have abandoned her husband and the minor children without good cause. No question of dependency is involved, except that which the law presumes. But the same right is given the husband who is not presumed to be dependent upon his wife. Therefore the question of dependency is not to be considered in arriving at the meaning of the statute. We think the statute created a liability upon the association, immediately upon the death of Pete Sanders, for payment according to the terms of the statute

and a right in Minnie Sanders to that payment. The liability of the association was of the nature of a debt, and the right of Minnie Sanders was that of a creditor in such debt. It is not questioned that she was the beneficiary. The statute, in the event of death resulting from the injury, expressly states the amount of compensation, within limits, to which she was entitled. It is not to be calculated with reference either to her necessity or to her expectation of life. It is subject to a maximum and a minimum, but it is not to be proportioned to her life expectancy, in any degree. The act says the association shall pay to the beneficiaries, irrespective of their expectation of life, and Minnie Sanders is the person provided by statute for whose benefit it is to be paid. The statute created a debt on the death of Pete Sanders owing by the association to Minnie Sanders. Being such, it became a vested right transmissible to the heirs of Minnie Sanders. The statute orders the payment of a definite sum, "sixty per cent. of his average weekly wages," subject to the maximum and the minimum also definite, "for a period of three hundred and sixty weeks from the date of the injury," to a person made definite by the statute. It provides every element of a vested right. A fixed amount is awarded to a definite person, as a matter of right, without suggesting in any way an abatement on the death of the person to whom it is made prior to its full payment.

Where a statute is clear and unambiguous, there is no room for judicial construction. Blanks v. Mo., etc., Ry. Co. (Tex. Civ. App.) 116 S. W. 377; Id., 103 Tex. 191, 125 S. W. 312; Clarey v. Hurst (Tex. Civ. App.) 136 S. W. 840. If a statute is not ambiguous, its meaning and legislative intent must be determined from the language used. Gross v. Colonial Assurance. Co., 56 Tex. Civ. App. 627, 121 S. W. 517. The only construction that can justifiably be given the statute providing for award when the injury results in death is the plain meaning of the words used. No authority exists in the courts under any rule of statutory construction to change the words used by omission or addition. Compensation is awarded in a definite sum with no conditions attached, except that the payments are to be made weekly. That it is not all due and payable at once does not argue that the present right to the payments when they do mature is not a vested right. Provisions to restrain the beneficiary from squandering the compensation money do not prevent the right to it from vesting in him.

Other provisions of the statutes, instead of tending to conflict with this construction of section 8, rather reinforce and strengthen the view taken of its meaning. The words "insurance association," "policy," "compensation," "liability," "liability of the associa-

tion," "promise," "adjustment," "settlement," and "commutation" tend to refute the idea of a pension or rebate of any kind.

Section 15 of part 1 provides that:

"In cases where death or total permanent incapacity results from an injury, the liability of the association may be redeemed by payment of a lump sum by agreement of the parties thereto, subject to the approval of the Industrial Accident Board hereinafter created. This section shall be construed as excluding any other character of lump sum settlement save and except as herein specified; provided, however, that in special cases where in the judgment of the board manifest hardship and injustice would otherwise result, the board may compel the association in the cases provided for in this section to redeem their liability by payment of a lump sum as may be determined by the board."

It is noticeable that the section just quoted says "the liability of the association may be redeemed by the payment of a lump sum." There could be no liability of the association without a corresponding right in the beneficiary. If the liability of the association was not more than for weekly payments to the beneficiary as they matured, there could be no lump sum settlement of such liability. The provision for a lump sum settlement is a recognition of the right of the beneficiary to all the weekly payments awarded. Otherwise the beneficiary might receive by such settlement money he would never be entitled to receive, because no one can foretell whether he would live to receive all of the money by payments if made weekly. He might die at any time after a lump sum settlement.

That portion of section 15 just quoted following the word "provided" is still more conclusive. Hardship and injustice could not result from weekly payments if the beneficiary had no right to more than each weekly payment as and after it accrued, that is matured. If he had no present right in future unmatured weekly payments, there could be no injustice to him in withholding those payments until each one of them became due. It would be entirely just to withhold each until he had a right to it. To compel the payment of any such weekly installments before the beneficiary has a right to it is an injustice to some one else and a special favor, and might be a gift to the beneficiary at the expense of such other person.

A portion of section 5a, part 2, of the act, reads:

"It is further provided that where the board has made an award against an association requiring the payment to an injured employé or his beneficiaries of any weekly or monthly payments, under the terms of this act, and such association should thereafter fail or refuse, without justifiable cause, to continue to make said payments promptly as they mature, then the said injured employé or his beneficiaries, *in case of his death*, shall have the *right to mature the entire claim* and to institute suit thereon in any court of competent jurisdiction where the injury occurred *to collect the full amount thereof.* * * *"* (Italics ours.)

Vernon's Ann. Civ. St. Supp. 1918, art. 5246—45.

Certainly, if the beneficiary did not have a right to the "entire claim," he could not "collect the full amount thereof." The statute just quoted does not create a right in the beneficiary to the unpaid weekly payments because of failure to make them promptly as they mature, but it gives him, upon the contingency expressed, the right only to mature immature payments in which his right has already vested. If the right to the entire claim had not already vested, he could not declare it matured and collect it by suit.

Defendant in error insists that the words "for the sole and exclusive benefit" cut off every person, except those named as beneficiaries in section 8a, part 1, from ever receiving any of the compensation; and therefore that the right to compensation does not vest in the first taker. As shown above, our view is that those words refer to the group mentioned in that section as the sole and exclusive beneficiaries for the mere purpose of declaring and determining whether any one shall be awarded compensation upon the death of the employee, and mean only that, in the absence, at the time of the death, of all of those named, no one is entitled to compensation; that those words merely segregate from all other persons a group of persons, one or more of whom only is entitled at the time of the death to take the compensation; that, after the one or more of that group entitled to take at the time of the death have so taken, the words have no further force or effect, and the compensation becomes vested in the first taker by the words of the statute.

Defendant in error urges his position by way of analogy of the compensation statute in case of death to our general death statute, article 4698. That article reads:

"The action shall be for the sole and exclusive benefit of the surviving husband, wife, children and parents of the person whose death shall have been caused, and the amount recovered therein shall not be liable for the debts of the deceased."

This statute means that, if none of the persons named in it bring an action, none shall be brought. That is, it gives to those in the group the sole and exclusive right to bring an action for damages for death as against all other persons. It is not certain until after action is brought and trial had and judgment entered in favor of one or more of the group that any one is entitled to damages under that statute. After such a judgment in favor of one or more of the group designated, we think no one would contend that such judgment does not become a

1056 258 SOUTHWESTERN REPORTER (Tex.

vested right transmissible to the heirs of such person or persons. The compensation statute begins at a point in the proceedings corresponding to a judgment under the general death statute. The statute declares as specifically as a judgment of a court that the association shall pay and what it shall pay, and the beneficiary is as definitely determined as a judgment could determine a payee.

Under the general death statute the determination of the court that one of the group is entitled to damages vests' the right to such damages in that person. So, under the compensation statute, the determination by the statute that one of the group is entitled to compensation vests the right in that one of the group. All the board needs to do is discover whether any of the group named exist when the death occurs. If not, no one can have compensation. If any of them do exist, automatically one or more of them is entitled by the very terms of the statute to the compensation, and was so entitled from the instance of the employee's death. By the terms of the statute the right vests in the beneficiary just as by the terms of the judgment it vests in the plaintiff under the death statute.

Defendant in error also contends that, if the compensation descends, it must be administered upon, and that this would be contrary to the statute. The statute merely provides that:

"Such compensation shall not pass to the estate of the deceased to be administered upon, but shall be paid directly to said beneficiaries when the same are capable of taking, under the laws of the state, or to their guardian or next friend, in case of lunacy, infancy or other disqualifying cause of any beneficiary."

Independently of the statute, the compensation could not pass to the estate of the deceased because he never had any interest in it. By the plain terms of section 8a, supra, the compensation is provided for the beneficiaries. The statute does not forbid administration upon the compensation as a part of the estate of the deceased beneficiary.

It is argued that, since the statute, section 3, part 1, provides that no such right of action and no part thereof shall be assignable, the cause of action cannot survive; that the test of survivor of a cause of action is its assignability. On this point we have to say that, as a rule, causes of action which are not assignable do not survive. But this is because of qualities that inhere in the nature of the right. Where the statute for some special purpose, as for the protection of a claimant against improvidence, forbids assignment, nonsurvivability does not necessarily result therefrom. Monson v. Battelle, 102 Kan. 208, 170 Pac. 801. Especially is this true where the same statute that for-

bids the assignment also provides that the cause of action shall survive. Section 16, part 1, of our Employers' Liability Act, is as follows:

"In all cases of injury resulting in death, where such injury was sustained in the course of employment, cause of action shall survive."

We recommend that the judgments of the district court and of the Court of Civil Appeals be reversed, and that judgment be rendered in favor of plaintiffs in error, denying the setting aside of the award of the Industrial Accident Board.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and judgment rendered in favor of plaintiff in error as recommended by the Commission of Appeals.