**TEXAS EMPLOYERS' INS. ASS'N v. LAWRENCE et al. (No. 547.)**

Court of Civil Appeals of Texas. Eastland. Feb. 15, 1929.

Rehearing Denied March 15, 1929.

Conner & McRae, of Eastland, Harry P. Lawther, of Dallas, and W. L. Saunders, of Gatesville, for appellant.

M. McCullough, of Eastland, and W. V. Dunnam, of Waco, for appellees.

HICKMAN, C. J. At about the hour of 4:20 a. m. on June 21, 1921, a gas explosion occurred in a tent occupied by W. C. Lawrence, his wife, and two small children, setting fire to the clothing of each and from the effects of which all of them died. One child died on June 22d, another on June 23d, Lawrence on June 24th, and Mrs. Lawrence on June 25th. At the time of the injury Lawrence was employed by the Fleming-Stitzer Road Building Company, which company had a contract to construct highways in Eastland county. The place where the injury occurred was in a camp controlled and operated by the employer. Gas lines conveying natural gas to the camp passed through the tent occupied by the Lawrence family. Lawrence's duties were to cook the meals for all of the road workers. For his wages he was paid $100 a month in cash, and was furnished a tent and board for himself and family, estimated to be of the value of $75 a month, making his monthly wage $175. The use of the tent and the board were a part of his contract of employment, and by the terms of the contract he was required to occupy this tent in the camp controlled by the employer. Since no eyewitness of the accident survived, the exact facts as to the cause of the accident cannot be known, but must be ascertained, if at all, by circumstantial evidence. The foreman testified that it was the duty of Lawrence to have breakfast prepared and on the table by 6:15 a. m., and he estimated that, in order to do so, Lawrence would be required to begin the preparation of the meal about 4:30.

This same witness furnishes the only description of what occurred at the tent that morning. In substance, his testimony was that he was awakened at 4:20 o'clock by the screams of Mrs. Lawrence. He arose from his bed and started to get his gun, but, as he did so, he saw Mrs. Lawrence in a sheet of flame rush past the corner of the tent occupied by him. Her clothing was on fire, and she was calling his name. When he stepped out of his tent she had run past it, but turned and came back. He caught her, and began tearing off her burning clothes. In an instant Mr. Lawrence came by, running and screaming the same way, with his clothes on fire. He passed a few feet beyond the foreman, and just at that time other employees came from their tents and tore the burning clothes off of Lawrence, while the foreman, at Lawrence's request, went to the babies. One of the babies was found lying at the east end of the cook tent on a scale platform where its father had evidently laid it, with its clothing on fire. The other child seemed not to be on fire at that time, but in some way its clothing was later ignited, and, as stated, it also died from injuries received.

The employer was a subscriber under the terms of the Workmen's Compensation Law, and the appellant was the insurer. Two claims for compensation were filed with the Industrial Accident Board, one by W. L. Lawrence, father of the deceased employee, his mother being dead. The other was filed by Leonard Williams and wife, Alice Williams, the father and mother of Mrs. Lawrence. An award was made by the board in favor of Williams and wife, and the claim of Lawrence was rejected. Lawrence appealed from the order denying him compensation, and the insurer appealed from the order granting compensation to Williams and wife. The two cases were consolidated in the trial court and tried as one, resulting in a judgment against Lawrence and in favor of Williams and wife against the appellant for the sum of $6,534, from which judgment comes this appeal.

The foregoing statement discloses that the compensation for the death of the employee all went to his father-in-law and mother-in-law, and none went to the employee's father, sisters, and brothers. This necessarily resulted from the fact that the employee died before his wife. Upon the death of the employee, a vested right to this compensation immediately passed to his surviving wife, and upon her death intestate such right passed under the laws of descent and distribution to her heirs. Moore v. Lumbermen's Reciprocal Ass'n (Tex. Com. App.) 258 S. W. 1051; Id. (Tex. Com. App.) 262 S. W. 472.

■ The first contention presented by appellant in its brief is that the trial court was without jurisdiction to hear and determine this cause. This contention is based upon the claim that the right of Williams and wife to compensation was not a question arising between an injured employee of a subscriber and an insurer, but was a question arising under the laws of descent and distribution; that the Industrial Accident Board is not a court, but is an administrative agency of the state, created for the purpose only of administering the provisions of the Workmen's Compensation Law; that, since the laws of descent and distribution are not a part of that law, the Industrial Accident Board had no jurisdiction to determine such laws and make an award thereunder; and that, since the Industrial Accident Board was without jurisdiction, the district court was without jurisdiction on appeal from such board.

We cannot agree to this contention. Article 8307, § 5, R. S. 1925, provides that all questions arising under this law, if not settled by agreements of the parties, shall, except as otherwise provided, be determined by the board. Article 8306, § 8a, R. S. 1925, provides that compensation shall be distributed among the beneficiaries as may be entitled to the same, according to the laws of descent and distribution of this state. We think that, under the provisions of these and other relevant sections of the act, the Industrial Accident Board is necessarily vested with the right to determine the beneficiaries of an award. Otherwise, the law would create a right without a remedy. Moore v. Lumbermen's Reciprocal Ass'n, supra.

■ The principal contention presented, and the controlling question of law in the case, relates to whether or not the injury which caused the death of the employee was sustained in the course of his employment. Article 8309, § 1, defines the term, "injury sustained in the course of employment." This definition, after excluding certain injuries not relevant here, uses this language:

"But shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employé while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere."

For an injury to be compensative under this definition, it must have had to do with, and originate in, the work, and, in addition thereto, must have been received while the employee was engaged in or about the furtherance of the business of the employer. The question presented here is, Did the employee receive his injuries under such circumstances as to render same compensative under the above definition? It cannot be definitely known just what caused the explosion, nor whether the employee was awake or asleep at the time of its occurrence. The evidence discloses that there was a gas explosion within his tent, which was of such violence as to scatter the furniture and set on fire the tent and the clothing of the occupants thereof.

It also discloses that gas pipes ran through this tent; that the explosion occurred at approximately the time when the duties of the employee required him to begin preparing breakfast. Gas does not explode unless it comes in contact with a spark or blaze. We therefore are of the opinion that it would not be mere speculation and conjecture to arrive at the conclusion that the gas escaped into this tent from the gas pipes running through it; that the deceased or his wife arose to begin the day's duties, and struck a match, which resulted in the explosion.

The facts and circumstances do not even suggest that the employee's injuries were occasioned by his disregarding or disobeying some instruction, or that they were brought about as the result of his undertaking some venture of his own not incidental to his occupancy of the tent. It is urged in this case that compensation should be denied because the employee may have been asleep, or may have arisen to administer to the natural wants of himself or his family. We do not think the right to compensation is dependent upon a showing in these particular matters, for compensation should be allowed in any of these events.

We have been cited to no Texas case, nor have we discovered one, deciding the question of whether an employee is in the course of his employment within the meaning of the Workmen's Compensation Law when he is injured in a place provided and maintained by his employer for him to occupy, and which he is, by the terms of his contract, compelled to occupy, and at a time when he is off duty.

We think the question is clearly decided in principle by the Supreme Court of our state, speaking through Justice Greenwood, in the cases of Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, and Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76. In those opinions our Supreme Court goes fully into the question of the meaning of this definition, and it would serve no useful purpose for us to discuss the principles governing its interpretation, as our discussion would be but a restatement of the principles there clearly announced. We have, however, made an investigation of the decisions in other jurisdictions upon cases involving facts very similar to the facts of this case, and have arrived at the conclusion that the general rule announced and established by the courts in interpreting definitions similar to, or identical with, that contained in our statutes above quoted, is that, when by the terms of the contract of employment the employee is required to sleep upon the premises of the employer, such employee, while on the premises, even when off active duty, if he is doing only what might be reasonably and naturally expected of him under such circumstances, is performing services having to do with and originating in the business of his employer, and is en-

gaged in or about the furtherance of the affairs or business of the employer. A few of the leading cases will be referred to.

In the case of Larson v. Industrial Accident Commission, 193 Cal. 406, 224 P. 744, by the Supreme Court of California, a workman on a ranch was injured by an explosion of coal oil while in a bunkhouse provided by the employer for his employees. The bunkhouse was the only place provided for the accommodation of the employees, and they were required to accept the accommodations provided; such accommodations being a part of their pay. It was held that injuries to an employee from such explosion in the bunkhouse while he was off duty were compensative under the statutes of that state. The California statute is not materially different from our statute.

In the case of Kaiser Lumber Co. v. Industrial Commission of Wisconsin, 181 Wis. 513, 195 N. W. 329, by the Supreme Court of Wisconsin, the facts were that the lumber company was operating a lumber camp, and it was incident to the employment of its workmen that the employees were furnished food and lodging on the premises. They were required to sleep in a bunkhouse. The injured employee was asleep at night in the bunkhouse when he was attacked and injured by another employee occupying the same room who had become insane. Compensation was allowed. The opinion uses this language:

"Under the circumstances of this case, where the employee was required to sleep on the premises of his employer as a part of his contract of hire, it has been held that the employee when so at rest is performing service growing out of and incidental to his employment."

In the case of In re Bollman, 73 Ind. App. 46, 126 N. E. 639, the Appellate Court of Indiana construed these facts: The injured employee was employed by the owner of a threshing outfit which he operated in a community, going from farm to farm. For a period of ten years prior to the accident the employee had been engineer for the thresher, and it was the duty of the employee to sleep nights where the machinery was left. The injury occurred while the employee was asleep on a bed improvised by him in the barn at the farmhouse where he was to thresh the next day. Compensation was allowed. The opinion uses this language:

"The question whether the accident resulting in injury or death in a given case arises out of the employment does not depend upon the minute details of what the employé was doing at the time, but rather upon the question as to whether the accident was due to a hazard to which the employé would not have been exposed apart from the business in which he was employed."

In the case of Harivel v. Hall-Thompson Co., 98 Conn. 753, 120 A. 603, by the Supreme Court of Errors of Connecticut, the facts were

that a traveling salesman was injured by attempting to escape from a burning hotel in the nighttime. His contract with his employer provided for the payment of a weekly salary and commission, transportation, and hotel bills. Compensation was allowed. The court uses this language:

"If the salesman lodged annd boarded on the premises of his employer, it would be conceded that his employment continued during this period. There can be no ·difference in principle between the furnishing of lodging and board by the employer upon his own premises or upon the premises of another. The hotel lodging furnished by the defendant to the claimant was its own for the time being, which it supplied to its salesman. The salesman was not, when injured, engaged upon the immediate duties of his employment, but he was doing something which was incidental to such employment."

In the case of Holt Lumber Co. v. Industrial Commission of Wisconsin, 168 Wis. 381, 170 N. W. 366, by the Supreme Court of Wisconsin, the facts were that the employee was a sawyer in the woods. He was paid $40 per month and board, and lived in a camp furnished by his employer. The men in the camp slept in bunks arranged so that one man slept above the other. On the occasion of the injury the injured employee had retired to his bunk, and, while talking to a fellow workman, a piece of straw dropped from the bunk above him and. lodged in his throat. Compensation was allowed. The following clear statement of the rule is contained in the opinion:

"In the instant case it was part of the contract of employment that Bebeau should sleep on the premises in the bunk furnished by the lumber company. It was in the course of·his employment to remain upon the premises nights and use the bunk furnished for him. Under such circumstances he was within the course of his employment. Foley v. Home R. Co., 89 N. J. Law, 474, 99 A. 624; Richards v. Indianapolis A. Co. et al., 92 Conn. 274, 102 A. 604; Hackley-Phelps-Bonnell Co. v. Industrial Commission, 165 Wis. 586, 162 N. W. 921, L. R. A. 1918A, 277; Kilduff v. Boston E. Co., 195 Mass. 307, 81 N. E. 191, 9 L. R. A. (N. S.) 873. "The general rule under the authorities is that when the contract of employment contemplates that the employé shall sleep upon the premises of the employer, the employé under such circumstances is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. Rucker v. Read, 39 N. J. Law J. 48; Chitty v. Nelson, 2 B. W. C. C. 496; Alderidge v. Merry, 6 B. W. C. C. 450; Griffith v. Cole Bros. et al., [183] Iowa, [415], 165 N. W. 577, [L. R. A. 1918F, 923]; Meyers v. Michigan Cent. R. Co., [199] Mich. [134], 165 N. W. 703; Cokolon v. Ship Kentra, 5 B. W. C. C. 658;

International & G. N. R. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219."

The above cases are illustrative of the holdings of the courts throughout the country. Many others could be cited. Extended notes upon the question are contained in 31 A. L. R. pp. 1251 to 1261, and 56 A. L. R. pp. 512 to 514.

We believe the holdings of our Supreme Court in the Behnken Case and the Scurlock Case, supra, are in accord with the decisions in the above cases. In the Behnken Case the court thus defines "having to do with and originating in the work," etc., "of the employer":

"An injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business. As tersely put by the Supreme Court of Iowa: 'What the law intends is to protect the employee against the risk or hazard taken in order to perform the master's task.' Pace v. Appanoose County, 184 Iowa, 498, [506], 168 N. W. [916], 918."

The same opinion thus defines "engaged in or about the furtherance of the affairs, etc., of the employer":

"Was Behnken engaged in or about the furtherance of the affairs or business of his employer when he received the injury causing his death? He was upon the crossing provided as the means of access to his work solely because he was an employee. He encountered the dangers incident to use of the crossing in order that he might perform the duties imposed by his contract of service. Without subjecting himself to such dangers he could not do what was required of him in the conduct of the lumber company's business. He had reached a place provided and used only as an adjunct to that business, and was injured from a risk created by the conditions under which the business was carried on."

In the Scurlock Case the opinion quotes with approval from the opinion in the case of International & G. N. Ry. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219, underscoring the following language:

"It was only by reason of the fact·that he was an employee of the company that he was in the car on the side track at the time he was injured."

The Ryan Case was decided before the enactment of compensation laws, but the holding therein has peculiar application to the construction of the statute here involved, as is manifest by the fact that our Supreme Court so applied it in the Scurlock Case.

It is our conclusion that the jury was warranted in finding that the deceased employee died of injuries having to do with, and originating in, the work of his employer, and that such injuries were received while the employee was engaged in and about the further-

ance of the affairs or business of his employer.

Upon the submission of this case it was argued orally that no sufficient evidence was contained in the record to form a basis for estimating the employee's wage, in that the evidence showed that he had been employed at his occupation but a short time, and there was no evidence as to his wages except for the short period of his employment. We do not find this point presented in appellant's brief. There is no separate proposition covering the point and no statement from the record in the brief disclosing the basis for this contention. We are not permitted to search the statement of facts in an effort to discover whether or not an error was committed, and this contention is therefore overruled.

The judgment of the trial court is affirmed.