## WATTS v. CONTINENTAL CASUALTY CO.
### (No. 1088—5318.)

Commission of Appeals of Texas, Section B. June 28, 1929.

White & Yarborough, of Dallas, for plaintiff in error.

Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

SHORT, P. J. The plaintiff in error, Bob Watts, sustained accidental injuries May 14, 1926, in Dallas county, being at the time an employé of the Dallas Transportation Company, a subscriber under the Workmen's Compensation Law (Rev. St. 1925, §§ 8306–8309), carrying a policy of insurance properly issued and then in force with the defendant in error, Continental Casualty Company. Upon the trial of the case in the district court, where it was pending, after having been filed there by the defendant in error, all of the facts necessary to entitle the plaintiff in error to a recovery for some amount as an injured employé claiming compensation were admitted by agreement of counsel, except the alleged facts that the plaintiff in error was injured while in the course of his employment, and the character and extent of his injuries. When the testimony had been concluded, the trial court instructed the jury to return a verdict in favor of the defendant in error. This judgment was, upon appeal to the Court of Civil Appeals for the Fifth Supreme Judicial District, affirmed, and the case has reached the Supreme Court in the usual way. 10 S.W.(2d) 1028.

The Dallas Transportation Company, at the time the plaintiff in error was injured, maintained an office in the city of Dallas, and conducted a business where the plaintiff in error was actually working, a few miles distant from this office. It was the custom of the employés of the company, before proceeding to the place of work, to report to the office before 7 o'clock in the morning. The plaintiff in error contended, and so testified, that the company paid him his wages at 50 cents an hour beginning at 7 o'clock a. m., and ending at 5:30 p. m., with 30 minutes intermission at noon. On this particular morning, the plaintiff in error, with other employés, reported at the office before 7 o'clock, and was directed by the foreman of this crew of workmen to ride out in one of the company's trucks which was going in the neighborhood of the location of the work, and when they reached the nearest point to get off the truck and walk to the place where the work was to be done. This was done. On the way the plaintiff in error voluntarily, as found by the jury, left the truck while it was in motion, and received the injuries forming the basis of his claim to the Industrial Accident Board by falling upon some rocks as he left the truck.

The jury found, in response to an issue submitted on that question, that the agent of the company *had instructed and required the plaintiff in error* to ride on the truck in question to a point near the place of his employment on the occasion in question, and the Court of Civil Appeals approved this finding of fact as being supported by the testimony. In discussing the law of the case, we will assume this as an admitted fact, as also every

other fact necessary to sustain a recovery by the plaintiff in error, and as found by the verdict of the jury, which we need not mention at this time, and confine ourselves to the materially contested issues in the case, as stated in the opinion of the Court of Civil Appeals: (1) Was plaintiff in error engaged in work in the furtherance of the business of his employers while he was being transported from the office to the work in which he was to engage? (2) If plaintiff in error was so engaged while en route to his work, did he momentarily step aside from the work of his employer to engage in his own private enterprise, and by so doing receive the injuries which form the basis of his claim for compensation?

We will discuss the second question first. The jury answered one of the issues submitted that the plaintiff in error voluntarily jumped from the truck while it was in motion, and thus and thereby received the injuries which form the basis of his claim. The Court of Civil Appeals concluded that the act of the plaintiff in error in voluntarily jumping from the truck, and thereby causing his injuries, was an act taken by him entirely outside of the course of his employment, and not covered by the policy of insurance—citing London Guarantee & Accident Co. v. Thetford (Tex. Com. App.) 292 S. W. 857, American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949, and Quarles v. Lumbermen's Reciprocal Association (Tex. Civ. App.) 293 S. W. 333. None of these cases sustain the proposition approved by the Court of Civil Appeals, as applied to the facts of this case. In the first case cited, the testimony was uncontradicted that the injured employé, Thetford, at the time he was injured, had not been *instructed and required* by the respresentative of his employer to ride on the truck in question. Upon the contrary, it appears that the agent of his employer had merely given the employé the *privilege* of riding on the truck, subject, however, to being called on to assist in loading and unloading supplies, and that the employé was not so called on the trip when the injuries were received. The Commission of Appeals, in speaking of this situation, denying recovery to the employé, says: "At most, the evidence goes no further, even if it go that far, than to show that whenever Thetford chose to avail himself of a *privilege*, extended to him by the oil company, of riding to and from town in one of the company's automobiles, the duties of his employment, by virtue of that fact, were so enlarged as to include the giving aid, *on the particular trip* in the loading and transportation of tools and supplies from town to the lease."

In the case at bar, the fact is found by the jury, and approved by the Court of Civil Appeals, that on the occasion in question, the injured employé was not only instructed, but also *required*, by the agent of the company to ride on the truck to a point near the place of employment. In the Quarles Case, the testimony showed that the employé was injured while violating a rule of his employer, and that the violation of this rule was the occasion of his injury. The facts in the Dinkins Case show that the injured employé had started for home after he had registered out for the day, when he was injured, three-fourths of a mile from his place of employment.

It is our opinion, under the undisputed facts of this case, that if the plaintiff in error was engaged in work in furtherance of the business of his employer, while he was being transported from the office to his work, in which he was to engage, that he did not momentarily step aside from the work of his employer to engage in his own private enterprise. The fact that he may have voluntarily jumped from the truck on which he was riding, rather than having been thrown off by a sudden lurch given by the truck, is of no legal importance. This is especially true, since the testimony offered by the defendant in error is to the effect that Watts voluntarily jumped from the truck for the purpose of riding in another car belonging to one of the follow employés then en route directly to the place where he was to work, with a view of avoiding the necessity of having to walk more than a mile, as he would have been compelled to have done, had he remained on the truck. The real question, outside of the extent of the injuries involved in this case, is whether the plaintiff in error, at the time he was injured, was engaged in work in furtherance of the business of his employer.

We think the answer to question No. 1 compels the conclusion that the plaintiff in error was so engaged. The language of that question is: "Was the plaintiff in error, Bob Watts, instructed and required by the agent and representative of the Dallas Transportation Company to ride on the truck in question to the place of his employment?" The jury said he was so *instructed and required*. In obedience to this *instruction and requirement*, the plaintiff in error, at the hour he was required to begin work, boarded the truck and started to the place where he was actually to begin whatever active work he was required to do. According to his testimony, his wages began at 7 o'clock. At the time he was directed to board the truck 7 o'clock had arrived. His employer's agent in charge of the crew assumed to take charge and direct the movements of the plaintiff in error, evidently for the purpose of furthering the affairs of the company. This principle of the law, as illustrated by this state of facts, is discussed by Judge Greenwood at some length in the case of Kirby Lumber Co. v. Scurlock, 112 Tex. 115, 246 S. W. 76.

The defendant in error apparently lays stress upon the undisputed fact shown by the record that Watts' employer had not expressly obligated itself to furnish him transporta-

tion from the office to the place he was working, though there was testimony to the effect that the employé usually found the means of going from the office to the place of work, by using automobiles or trucks belonging to the company and incidentally going in that direction, if not going to the place of work. In the Scurlock Case the employé was permitted to use his velocipede on the tramroad of the Kirby Lumber Company in going to and coming from work, to enable him more quickly and surely to attend to his duties, and the employé was killed by the employer's train at a point 1½ miles from the place of work. Under these facts the Supreme Court held the relation of master and servant existed, and that the injury grew out of the employment, and this, too, in face of the further fact that, when the injury occurred, the usual work in which the employé was supposed to engage was not then being done on account of the fact that the mill where he was working was not in operation on that day and the only work the employé was expected to do was work for which he was to receive no compensation, citing, in support of the holding in the Scurlock Case, the Ryan Case, 82 Tex 565, 18 S. W. 219, wherein it was shown that the employé was employed by the day, and further that his hours of work were from 7 in the morning until 6 in the afternoon, with an hour's intermission, and further that the employé's time was his own after 6 o'clock in the afternoon, and that he was a member of a bridge gang whose duty it was to move up and down the railroad, making repairs and living in some box cars, and while writing a letter, sitting in one of the cars, he received the injuries from a collision after 6 o'clock, and at a time when he was receiving no pay, and the company was under no obligation to continue the employment.

Judge Greenwood approves the following statement in that case: "In this case we think it is evident, from the facts testified to by the appellee, that he was, in contemplation of law, in the employment of the company at the time of the collision. His presence in the car on the side track at the time of the collision can be explained in no other way under the proof. It was only by reason of the fact that he was an employé of the company that he was in the car on the side track at the time he was injured. We do not wish to be understood as holding that if the fact was established that his employment had terminated he could not recover in a proper case. But we mean to say, that we do not think that under the facts in this case his employment had ceased, or that he was not, in contemplation of law, at the time of the injury in the service of his employer. We think that he was in such employment."

The principle announced in the Scurlock Case, supra, is also discussed and approved in Lumberman's Reciprocal Association v. Behnken, 112 Tex. 103, 246 S. W. 72, 28 A. L. R. 1402, in an opinion also delivered by Judge Greenwood, in which he says: "Though injuries arising from risks incidental to employment most frequently occur during hours of active labor and on premises * * * of the employer, yet they are not always so circumscribed either as to time or place"—citing International & G. N. Ry. Co. v. Ryan, 82 Tex. 571, 18 S. W. 219; Houston E. & W. T. Ry. Co. v. McHale, 47 Tex. Civ. App. 360, 105 S. W. 1151; Latter's Case, 238 Mass. 326, 130 N. E. 638. In the case last cited the facts are somewhat similar to the facts in the case so far as the circumstances are concerned, under which the injury was received.

We think the Scurlock and the Behnken Cases compel the conclusion that the plaintiff in error was engaged in work in the furtherance of the business of his employer while he was being transported from the office to the work in which he was to engage, and that the judgment of the Court of Civil Appeals, is error and should be reversed. If the plaintiff in error was engaged in work in furtherance of the business of his employer while he was being transported from the office to the work in which he was to engage, as we have held he was, then under the agreement found in the record, signed by counsel for the parties, that the daily wage of the plaintiff in error, at the time he sustained accidental injuries, was $5.00 per day, it necessarily shows that the work of that particular day, for which he was to receive compensation, had already begun, and the incidental issue, presented by the testimony, whether the pay of the employé commenced when he reached the place where he actually performed the services he usually performed, becomes immaterial. This is true, notwithstanding that it was the contention of the defendant in error that the plaintiff in error, under his contract of employment, was only to receive 50 cents an hour, and was only entitled to receive this for the hours in which he was actually engaged at his usual work; the agreement mentioned concluding any further discussion of this question, and rendering immaterial any issue arising under this character of testimony.

The jury found, in response to other special issues submitted, the following: (1) That the plaintiff in error sustained a total disability as a result of his injuries on the occasion in question. (2) That this total disability has continued and will continue fom the date of the injury, 104 weeks. (3) That the plaintiff in error sustained a total loss from the use of his left leg, resulting from the injuries on the occasion in question. (4) That this total loss of the use of plaintiff in error's left leg will continue and has continued from the date of the injury, 12 weeks. (5) That the plaintiff in error will have the partial loss of the use of his left leg, resulting from the injury. (6) That the loss of the partial use of his leg,

resulting from the injury, will continue 400 weeks. (7) That the percentage of the permanent partial loss of the use of plaintiff in error's leg is 20 per cent. (8) That this loss of the use of his left leg will not be permanent. (9) That a hardship will result, and that an injustice will be done to plaintiff in error, if a lump sum settlement is not paid to him.

Since all of the material facts necessary to sustain the recovery by the plaintiff in error for the injury he received, under the allegations of his cross-plea, have been established by the testimony, or by the agreement of the parties, no necessity exists to remand the case for another trial, but, on the contrary, authorizes the Supreme Court to render such judgment as the district court should have rendered.

We therefore recommend that the judgments rendered by the Court of Civil Appeals and the district court be reversed, and that judgment be rendered by the Supreme Court that the plaintiff in error, Bob Watts, do have and recover of the defendant in error, Continental Casualty Company, the sum of $2,996 in full satisfaction of the claim of the plaintiff in error for injuries received, as stated in the pleadings, with interest from the date of this judgment at the rate of 6 per cent. per annum, and that the attorneys representing the plaintiff in error, White & Yarborough and W. D. Davis, be and they are hereby adjudged to have an interest in said recovery equal to 33⅓ per cent. thereof, and to be entitled to receive said proportion of any and all sums paid in satisfaction of said judgment. We also recommend that the plaintiff in error recover all costs incurred in all the courts.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.