## G., C. & S. F. R'y Co. v. A. S. Dorsey.

(Case No. 5349.)

1. MASTER AND SERVANT—CO-EMPLOYERS—LIABILITY—The plaintiff was employed by one railway company to act as night switchman in a "union yard," jointly kept and used by that company and two others. While performing his duty upon a train and track of one of the latter companies, and because of some negligence of that company, he sustained personal injury. *Held:*

(1) Between the plaintiff and his employer the relation of master and servant existed by express contract. Between the plaintiff and the other companies that relation arose by inference from the service and the connection of the companies.

(2) No proof being offered as to the contract between the companies, their duties respecting the yard where the plaintiff was injured could only be inferred from the manner in which the premises were used.

(3) It appearing that the plaintiff was employed to work in the "union yard," that it was used by the three companies in common, and that plaintiff was injured while performing his duty, it was not error to instruct the jury that if the injury resulted from negligence of either company, all were liable jointly and severally.

2. ISSUES OF FACT—The court does not invade the province of the jury in failing to submit to them issues of fact upon which there is proof upon but one side. There is really no issue of fact in such a state of the evidence.

3. CASES COMPARED—Railway Company *v.* McClanahan, Tex. Law Rev., vol. 3, p. 324 ; Vary *v.* Railway Company, 42 Ia., 246 ; Railway Company *v.* Dorsey, Tex. Law Rev., vol. 4, p. 115, compared.

4. DAMAGES—The supreme court will not set aside the verdict of a jury upon the ground that it awards excessive damages, unless in the conscientious discharge of its duty of revision, such verdict cannot receive the assent of the court.

APPEAL from Tarrant. Tried below before the Hon. M. D. Priest, special judge.

This was an action to recover damages for personal injuries, the damages being placed at $20,000. The suit was originally brought against the Gulf, Colorado and Santa Fe Railway Company, but by an amended petition the Galveston, Harrisburg and San Antonio Railway Company was made a co-defendant. The petition alleged that on November 29, 1882, plaintiff was employed by the defendants as night switchman in a certain railroad yard at Rosenberg Juntion, in this state; that it was the special duty of plaintiff to couple and uncouple the cars of defendants then being run upon their respective lines of railway through and at the junction; that plaintiff, while in the performance of his duty, and in obedience to the orders of his superior officer, in coupling two cars then being run upon the roadbed and lines of defendants, had his right arm, shoulder and hand caught and crushed between the deadwood and draw-heads of the two cars; that the cars, draw-heads, deadwoods, and all the apparatus thereof, as well as the

roadbed of the yard, were all defective, out of repair, and besides, of a dangerous character and pattern, and in using them the defendants were guilty of gross negligence and total disregard of the life and safety of the plaintiff; that by reason of negligence in using and operating the defective roadbed and dangerous apparatus for coupling and uncoupling its cars, plaintiff received the injuries complained of; that plaintiff was wholly ignorant of the defective roadbed and the dangerous character of the machinery and apparatus used and employed by defendants in operating the yard and coupling the cars; that the roadbed was uneven and not ballasted in the yard upon which plaintiff was working at the time, and the two cars had upon them certain pieces of wood and iron, or apparatus, known as "outside deadwoods" or "man-killers," which were of a most dangerous kind; that there were other safer and better couplings and drawheads used by railroads, which defendants might have employed, but knowingly and negligently continued to use defective and dangerous cars, drawheads and couplings; that by reason of the injuries so inflicted, and as the proximate result thereof, plaintiff suffered great bodily hurt and mental anguish, being confined to his bed for a period of three months, requiring skillful medical and surgical treatment, as well as constant and continued dressing and care; that he had never recovered from his injuries, but was permanently disabled, his right arm being so crushed and broken as to render it stiff and useless, besides permanently impairing his health and rendering him through life unable to perform manual labor, and depriving him of the power of deriving comfort, capacity and pleasure from the use of his faculties and members.

The answer of the Gulf, Colorado and Santa Fe Railway Company contained general and special demurrers; general denial and not guilty, a plea charging plaintiff with contributory negligence; a plea charging that plaintiff's injuries resulted from the negligence of a fellow servant, a superior officer; and a plea alleging "that plaintiff voluntarily entered into the employment as night switchman in the railroad yards at Rosenberg; that the coupling and uncoupling of cars incident to his employment, especially of the cars of the Galveston, Harrisburg and San Antonio Railway Company, and that he assumed all the risk of dangers arising therefrom; and, further, that if the deadwoods and couplings were defective, or out of order, it was unknown to defendant, and that the cars were not the property of the defendant at the time of the accident."

The scene of the accident was the "union yard" at Rosenberg Junction, used by the two defendant companies and the New York, Texas, and Mexican Railway Company. Each company supplied some part

of the yard or its attachments, and each company was allowed all the privileges of the yard. The plaintiff was employed by, and received his pay from, the Gulf, Colorado and Santa Fe Company. It was his business to act as night switchman for all tracks and trains in the "union yard." The opinion states other facts.

The trial resulted in a verdict and judgment for plaintiff, fixing his damages at $15,000.

The Gulf, Colorado and Santa Fe Railway Company appealed.

*Davis, Beall & Rogers,* for appellant, on the right of the court to instruct the jury that defendants, if liable at all, were liable jointly and severally, cited: Cobb v. Beall, 1 Tex., 342; Andrews v. Marshall, 26 Tex., 212; Railway Company v. W. L. Dorsey, Tex. Law Rev., vol. 4, p 115.

On the liability of appellant for injuries suffered by plaintiff while working on a track and train not belonging to appellant, they cited: Railway Company v. Dorsey, Tex. Law Rev., vol. 4, p. 115; Vary v. Railway Company, 42 Ia., 249; Railway Company v. Smithson, 45 Mich., 212; s. c., 1 Am. and Eng. R'y Cases, 101, and notes.

That the damages awarded were excessive, they cited: Railway Company v. Jackson, 55 Ill., 492; Railway Company v. McKean, 40 Ill., 218.

*Ball & McCart,* for appellee. cited: Railway Company v. McClanahan, Tex. Law Rev., vol. 3, p. 324; Fay v. Railway Company, 11 Am. and Eng. R'y Cases, 193; Hough v. Railway Company, 100 U. S., 213; Gibson v. Railway Company 46 Mo., 163; Bryant v. Bigelow Carpet Co. et al., 7 Am. and Eng. R'y Cases, 72; Dicey on Parties, 448; Muldooney v. Railway Company, 36 Ia., 462; O'Neil v. Railway Company, 9 Fed. Rep., 337, and notes; King v. Railway Company, 8 Am. and Eng. R'y Cases, 119; Railway Company v. Whitmore, 58 Tex., 276; Ellis v. Railway Company, 17 Am. and Eng. R'y Cases, 641; Railway Company v. Randall, 50 Tex., 255, and cases cited; Railway Company v. McNamara, 59 Tex., 255; Solin v. Railway Company, 13 Nev., 106; Railway Company v. Pinto Tex. Law Rev., vol. 3, p. 9; Walker v. Railway Company, 63 Barb., 260; Rockwell v. Railway Company, 64 Barb., 438; Railway Company v. Young, 19 Kan., 488; 25 Cal., 460; Shaw v. Railway Company, 8 Gray, 45; Caldwell v. Steamboat Co., 47 N. Y., 282; Harved v. New York Elevated R'y Co., 24 Hun., (N. Y.) 184; Collins v. Council Bluffs, 32 Ia., 324; Railway Company v. Frederick, 7 Ill., 294; Gale v. Railway Company, 76 N. Y., 594; Croker v. Railway Company, 36 Wis., 679; Railway Company v. O'Donnell, 58 Tex., 27; Railway Company v. Boehm, 57 Tex., 152; Galveston Oil Co. v. Malin, 60

Tex., 645; Railway Company *v.* Stout, 17 Wall., 657; Smith *v.* Railway Company, 18 Fed Rep., 304; Berg *v.* Railway Company, 50 Wis., 419; Railway Company *v.* Whitehead, 44 Miss., 466.

ROBERTSON, ASSOCIATE JUSTICE.—The plaintiff, when injured, was in the employment and pay of appellant. He was coupling cars of the other defendant on a part of the yard originally belonging to that defendant, but he was doing what the appellant employed him to do. He was the appellant's servant, though he may have been also the servant of the other defendant. In Railway Company *v.* McClanahan, reported in Tex. Law Rev., vol. 3, p. 324, McClanahan, in loading a train belonging to another company, was injured by a defect in the cars, but his master was held liable. In *that* case the train was on the master's road, but the defect was not in the road. In *this* case the defect was in the train and the track of the other defendant. The track, however, formed part of a yard used in common by the three companies, whose lines intersect at Rosenberg. One company furnished the engine crew, another the fuel for the engine, and the plaintiff was furnished by appellant, all for the service of the several companies in the union yard. Every part of the yard was used in manipulating the trains of each company, as the occasion required. Neither of the defendants, each possessing peculiar facilities for making such proof, offered any evidence of the contract between the three companies respecting the common yard. Their duties could only be inferred from the use of the premises. About this use there was no conflict in the evidence. The track on which the plaintiff was injured, under the arrangement between the companies, as evidenced by the use made of it, was as much controlled and owned by appellant as by the other defendant, to which it originally belonged. In Vary *v.* Railway Company, 42 Iowa, 246, it did not appear whether the plaintiff was injured on the road of the defendant or of the company by which he was employed. His engagement was to serve both companies, very much in the same way with the plaintiff in this case, and it was held that he could sue either or both, and it was said: "This principle is elementary, and needs no citation of cases in its support."

That the plaintiff was employed by appellant to work for the three companies interested in the union yard, that the entire yard was used by these companies in common, and that the plaintiff was injured while performing the duties for which the appellant engaged him, were proven and undisputed facts. The court below had the right to assume them to be true, and to advise the jury of the law of the case upon that assumption.

The court does not invade the province of the jury in failing to submit to them issues of fact, upon which there is proof upon but one side, and upon which a contrary finding would be wholly unsupported by the evidence. There is really no issue of fact in this state of the evidence.

To these uncontroverted facts the court below correctly applied the law in the charge. Each defendant was a party to the negligence of the other. If either could relieve itself of the duty by a contract that the other should put and keep in proper condition the track where plaintiff was injured, no such contract was proved. Under the evidence, the track was the track of appellant as well as the track of the other defendant. It was defective, and at least partly caused the plaintiff's injury. But if the track was safe, and the injury was caused solely by defects in the cars of the other defendent, then, on the authority of the Vary case, both defendants were liable, and the appellant could also be held under the principle of the McClanahan case.

The appellant is the last of the three masters that could escape liability. It hired the plaintiff—its yard-master directed his labors. Betwixt it and him the relation of master and servant was created by express contract. That relation between him and the other companies arises by inference from the service and the connection of the companies *inter se.* There is no complaint that the duties of the master were mis-stated or overdrawn. But it is insisted that the appellant was not the plaintiff's master at the time of the injury. The plaintiff was doing what the appellant employed him to do. The master cannot escape his liability by fixing liability upon another. Both are charged. But, under the facts presented in this record, the plaintiff was the servant of all the companies interested in the union yard. Each of them owed him the duty of a master. The duty and the liability would be delusive, if, at one moment the employe was the servant of one, at another, the servant of another; here in the care of one, and there, of another; as to the track, dependent upon one company, as to the cars, upon another, as to the movement of the engine, upon a third. The policy, which requires of the master ordinary care, would be practically without sanction, if the servant's remedy was hidden in such a labyrinth.

In the case of Railway Company *v.* Dorsey reported in Tex. Law Rev., vol. 4, p. 115, each of the companies appeared to have separate and distinct yards. In that case the plaintiff was employed to serve the several companies in their respective yards. It was held that he was the servant, when injured, of the one in whose yard he was at work. In that case the one made in this record is hypothetically stated thus: "It is not

doubted if he had been employed by appellant as its switchman, and to operate upon its track or yard, and he had been directed by its agent to perform service upon the yard, and with the cars of the other company, but that appellant would be liable for injuries resulting to him by reason of defects in the track or cars of the other company, which might have been known or remedied by the exercise of reasonable care and diligence. For, in such case, being the servant of appellant, he would have the right to rely upon it to protect him against such defects. * * * * * * But that is not the case before the court. Here Dorsey fully understood the nature of the employment. He was to couple cars and perform service upon *each of the three* different yards. * * * * *" The union yard for all its occasions belonged to the appellant. The liability is the same as if it had been the actual owner of the entire yard, and had, for considerations or purposes not disclosed, required its servants to couple cars and manipulate trains upon the yard for other companies. But the theory of liability presented by the court below in the charge, and approved by this court as the law applicable to the facts, is that the plaintiff was the servant of both defendants, each owed him the duty of master; the duty was not shared between them but jointly and severally owed; if anything was omitted or committed that ought not to have been, both were guilty of negligence and liable, and each was guilty and liable.

There is no error in the record and the judgment should be affirmed unless the verdict is excessive. No rule deserving the name has yet been devised by which the profession, or this court, can satisfactorily determine that a verdict in such cases is too small or too large. What shocks the conscience or manifests passion or prejudice in the jury are tests too elastic for practical use in the great majority of cases. They readily dispose of rare extremes. But the cases which need a rule are those which press the bounds of reason without transgressing; they disturb, but do not shock the conscience; voice a severe, but not necessarily an enraged or prejudiced jury. For such findings we have no safe or certain measure.

What is compensation for such an injury is ascertained by the average judgment of reasonable men. This, again, is generally best determined by the sworn twelve and the presiding judge. Yet, to revise their judgment is a part of the jurisdiction and duty of this court. The jury's verdict, approved by the trial judge, is potent evidence of the general average judgment of men. But the law will not allow us to accept it as conclusive. Our opinion may be invoked and must then be pronounced. On this question the volumes provided for our general guidance are dumb counselors. We are not better prepared for judging

what is a proper verdict in such case than any well qualified juror; our facilities for learning the general opinions of men are not as great. Yet, as the law stands, we must revise the decision of thirteen intelligent men. Their estimate, while not conclusive, is persuasive. It will not be set aside, unless, in the conscientious discharge of the duty to revise it, it cannot receive the assent of the court.

The verdicts as large as this for such injury which have been reviewed here have been reversed, but not solely on the ground of excess. In this case there is no other error. The cause was fairly submitted to the jury. The verdict was for *fifteen thousand dollars!* The plaintiff's collar bone was broken, his chest compressed between the cars, his right arm was broken in two places above and two places below the elbow, and the elbow joint was crushed. Though but seventeen years of age when injured he weighed more then than at the trial, more than two years later. His sufferings were intense and long continued, his health is probably impaired for life, and his life itself shortened. The use of his arm is necessarily, in a large measure, destroyed. But the verdict is nevertheless very large. The court has hesitated in reaching a conclusion. The judgment is affirmed.

AFFIRMED.

[Opinion delivered April 27, 1886.]