## BANKS v. COMMERCIAL STANDARD INS. CO.

### No. 11880.

Court of Civil Appeals of Texas. Dallas.
Dec. 1, 1934.

Rehearing Denied Jan. 26, 1935.

Houston & Johnson, of Dallas, for plaintiff in error.

Touchstone, Wight, Gormley & Price, of Dallas, for defendant in error.

BOND, Justice.

Plaintiff in error, W. W. Banks, instituted this suit in a district court of Dallas county, to set aside a final ruling of the Industrial Accident Board of Texas, which denied him

compensation, and to recover compensation against the defendant in error, Commercial Standard Insurance Company, for personal injuries received while employed by the Wyatt Metal & Boiler Works, which carried compensation insurance with the defendant for its employees.

All jurisdictional facts were pleaded and proved, and plaintiff's case on the merits was fully developed. At the close of the evidence the court instructed the jury to return a verdict for the defendant, and entered judgment accordingly. The theory upon which the court acted was that the evidence disclosed as a matter of law that plaintiff did not receive his injuries in the course of his employment.

Plaintiff, by assignment of error, assails the action of the trial court in giving the peremptory instruction and rendering judgment upon such verdict because the evidence was at least sufficient to raise an issue for the determination of the jury as to whether plaintiff sustained injuries in the course of his employment and the other essentials for a judgment in his favor.

The testimony is sufficient to authorize the conclusion that, on the date of the injury, the Wyatt Metal & Boiler Works was a corporation and a subscriber under the Workman's Compensation Law of Texas (article 8306, et seq. Vernon's Ann. Civ. St. 1925), and had a policy with the defendant, conditioned to pay employees of the Wyatt Metal & Boiler Works such compensation as the law allows and subject to the provisions and benefits of the Workman's Compensation Law of the state; that due notice was given of the injuries and accident of plaintiff; that the Industrial Accident Board entered its final decision; that the district court of Dallas county had jurisdiction of the subject-matter and parties to the suit; and that plaintiff, W. W. Banks, was employed by the Wyatt Metal & Boiler Works in the regular course of its business, as a boiler maker layer-out.

W. W. Banks' employment required him to be subject to the employer's control from the time that he punched the time clock at 7 o'clock in the morning until he again punched the clock at 5 o'clock in the evening; that his duties were such that he was subject to call by his employer to do work incident to his employment at all times between registering on duty in the morning and registering off duty in the evening, and that only 30 minutes in the middle of the day were allowed him for lunch.

The employer's plant, where plaintiff was engaged to work, is located about 3 miles out from the city of Dallas on the south side and abutting to a public highway known as Commerce street, a 30-foot paved highway running east and west through the city of Dallas and extending about one-quarter or one-half of a mile beyond the Wyatt plant, and there it stops or intersects a public crossroad. At this intersection, a gate is provided for entrance into a private inclosure belonging to a cement plant, not in any way connected with the metal works. In all respects, Commerce street is an extensively used public highway, extending west from the city of Dallas, and beyond the employer's plant.

The Wyatt plant was inclosed by a high wire fence, provided with entrance gates to and from its workhouses. Across Commerce street from the plant were located two restaurants, where employees were privileged to and usually did take their meals. The company, at noontime, opens the gates to their inclosure, allowing exit for the employees to leave the plant at their lunch time. There was no agreement or duty imposed by the employer for its employees to leave the plant or to go to the restaurants for their lunch; they were privileged to go and eat wherever they desired. Some of the employees brought their lunch and ate it either in the plant or in their automobiles parked on the street in front of the plant and elsewhere, while others went to the restaurants across the highway. The employer had no interest in or control over the restaurants or how the employees went to their lunch. The company exercised no control whatever over the employees' action during the period for lunch, except as to require them to be back on their jobs in 30 minutes, and be retained or called back on duty when needed.

On February 27, 1933, as plaintiff was about to leave the plant for the purpose of going to lunch, he was detained for about 4 minutes by one of his superiors with reference to his work, and, as stated by him, he then hurriedly left the plant, going out one of the open gates and proceeded in a run diagonally across the highway toward one of the restaurants for lunch, when he was struck by a passing automobile, sustaining injuries.

It is obvious that plaintiff's injuries happened at a time when he was running on a paved public highway on his way to eat lunch; that he was not on his employer's premises or on any driveway or entrance to his employer's place of business; that he was not required by his employment to cross the street

and go to the restaurant, which was his destination at the time of his injuries; that he was doing nothing in furtherance of his employer's business or in performance of any work or errand for his employer; that he followed his own desires and inclination and was injured in a place that was used by the public generally, thus subjecting himself voluntarily to the risks and hazards incident to the use of a public thoroughfare.

Plaintiff's employer had no vested right in the street and his employment did not require him to go across the street for lunch. His employer did not create a condition at the plant which could reasonably be construed as implying that the action taken by the employee in crossing the street was a necessity incident to his employment. The risks and hazards the employee voluntarily assumed in crossing the highway were evidently outside of the risks and hazards incident to his work for his employer, and for which the compensation insurance policy was not issued and the Workman's Compensation Act not intended to cover.

The willingness of the court to extend a liberal construction to the beneficent remedial act of the Legislature cannot be extended as to allow compensation to include casualty occurrences, when due to hazards of the public generally, and not in furtherance of the employer's work or business, when only limited and prescribed risks were intended and specifically provided. To come within the act, the injury received must be shown to have originated in the work, and further that it was received while engaged in or about the furtherance of the employer's business.

In the case of American Indemnity Co. v. Dinkins (Tex. Civ. App.) 211 S. W. 949, 957 (writ of error refused), it is clearly stated that: "To come within the term 'injury received in the course of employment,' it must be shown that the injury originated in the work, and, further, that it was received by the employee while engaged in or about the furtherance of the affairs of the employer. If it be conceded that the injury originated in the work, it would still be necessary, in our opinion, to show that the employee was engaged in the furtherance of his employer's business." This holding was approved by the Supreme Court in Lumberman's Reciprocal Ass'n v. Behnken, 112 Tex. 103, 246 S. W. 72, 75, 28 A. L. R. 1402, in which the court, speaking through Judge Greenwood, used the following language: "This court, by refusing the writ of error [Dinkins case], approved the conclusion that the injury to Dinkins was not

sustained in the course of his employment. Tested by the rules herein announced, the same result would be reached. Dinkins' right to use the street was not derived from his employment. The injury occurred at a place provided by the city for public use, and not at a place furnished by Dinkins' employer, as a special mode of access to his work. The danger to Dinkins was one to which each member of the public was alike exposed. He was himself as much exposed to the danger when traversing the street on purely private business as when hurt. Dinkins' injury did not result from risk or hazard incident to the conduct of his employer's business. His injury did not arise out of the business."

This is analogous to the situation here. Banks' right to use the street or highway in going to his lunch was not derived from his employment, or by a condition existing as to compel him to go into the zone of danger. His injuries occurred at a place provided by the city or county for public use, and not at a place furnished by his employer as a special mode of access to his work. The risk and danger to Banks was one to which the public generally was exposed. It is apparent, we think, that Banks was not in the course of his employment when injured. He was not engaged in the furtherance of the affairs of his employer.

It may be conceded that Banks received his injuries because of the fact that he was employed by the Wyatt Metal & Boiler Works, would not have been at the place or in the vicinity of the occurrence and would not have been injured had it not been for such employment, therefore, the injury originated in the work, yet, such injury under the statute is not compensable. It must be shown that it was received by the employee while engaged in the work or business of the employer, and resulted from a risk or hazard which was necessary or ordinary or reasonably inherent in or incident to the conduct of such work or business. Lumberman's Reciprocal Ass'n v. Behnken, supra; American Ind. Co. v. Dinkins, supra; London G. & A. Co. v. Smith (Tex. Civ. App.) 290 S. W. 774; Texas Employers Ins. Ass'n v. Smith, 75 S.W.(2d) 732, opinion of this Court of September 29, 1934.

What the Workman's Compensation Law intends is to protect the employees against risks or hazards taken or imposed on them in order to perform the employer's work or business. It is true that it is as necessary that a workman must have food and refreshment as it is to do his work without unnecessary physical inconveniences, and it is also necessary

that he have some time during the twenty-four hours of the day in which to rest and sleep, but these necessities do not give him a right to compensation when he has gotten through with his work, has left his place of employment, subjected himself to the hazards of the public generally on a public highway, and is injured, where his employer or his employment do not require him to do his work under conditions which rendered the employee liable to injury by outside agencies.

Banks was not required and his employer did not create a condition which necessitated him to go into the place of danger, the street was not provided solely as a means of access to his work, and he did not encounter the danger incident to use of the street in order that he might perform the duties imposed by the contract of service. He could do what was required of him in the conduct of the Wyatt Metal & Boiler Work's business and eat his lunch without subjecting himself to such dangers.

■ The uncontroverted evidence being that Banks was injured while traversing a public highway for his own comfort and enjoyment, that he was not performing any service for his employer, or that his employer created a condition which necessitated him in attempting to go across the highway, therefore, we are of the opinion, not in the course of his employment when injured. The judgment of the lower court is affirmed.

Affirmed.

LOONEY, Justice (dissenting).

My dissent is based upon the reasoning pursued and the authorities cited in my dissenting opinion filed in Texas Employers' Ins. Ass'n v. Smith (Tex. Civ. App.) 75 S.W.(2d) 732, 734, 736. I am of opinion that the undisputed facts show that appellant sustained the injuries of which he complained in the course of employment, within the meaning of the statute defining that phrase, or, to say the least, that the evidence raised the issue, which should have been submitted to the jury; hence, under either view, that the court erred in instructing a verdict and rendering judgment for appellee.

On Motion for Rehearing.

BOND, Justice.

In a motion for rehearing, plaintiff in error complained as to the findings of fact in our original opinion, in failing to note: (1) That the Wyatt Metal & Boiler Works had a storeroom or warehouse just across the street from its main plant, and on the same side of the street as was the café; (2) that the Wyatt Metal & Boiler Works had three gates to their main plant, and when Banks started across the street to his lunch two of the gates were locked, leaving only the gate near the shop office open for the convenience of the employees to go out of and from the main plant; (3) that at the time of the injury there was only one of the two restaurants across the street open; and (4) that the Wyatt Metal & Boiler Works had tried to get its employees to eat at that restaurant.

We attempted to give to the record in this case a fair and correct enunciation, depicting the surroundings of the place where the injured employee was required to work, the risks and hazards of his employment arising out of the work or business of his employer, and such matters as we thought were necessary or ordinary or reasonably inherent in or incident to the conduct of the work or business in which Banks was engaged. The matters complained of did not escape our notice, but felt they were of no value to the issues raised, in view of plaintiff in error not stressing their importance. We amend our findings in respect to the particulars assigned. However, the record does not show, nor can it be contended, that at the time of Banks' injuries he was going to the warehouse, or that the warehouse had anything to do with Banks' going into the zone of danger in furtherance of his employer's work or business. He voluntarily went out the open gate across the public street, and subjected himself to the risks and dangers of a public thoroughfare, on a mission of his own, to eat his lunch, which was neither required of him by his employment, nor could have been reasonably anticipated by his employer, and certainly, in going to his lunch, he was not in furtherance of the work or business of his employer, for which the insurance carrier assumed liability. He was privileged to eat his lunch within the plant or in automobiles, or go home or to the restaurant across the street, anywhere he may please to go. He chose to go to the café, open to the general public; he was the master of his own action, assuming the risk and hazards of his journey, for which neither his employer nor the insurance carrier could have prevented, and were in no way responsible for his injury.

We have again carefully considered plaintiff in error's assignments, and see no reason to depart from our original conclusion; therefore, the motion for rehearing is overruled.

Motion overruled.

LOONEY, J., dissents.