CITY OF WICHITA FALLS v. TRAVELERS INS. CO.

No. 14019.

Court of Civil Appeals of. Texas. Fort Worth.

Feb. 2, 1940.

Rehearing Denied March 8, 1940.

T. A. Hicks and Thelbert Martin, both of Wichita Falls, for appellant.

H. M. Muse, of Wichita Falls, and Pinkney Grissom and Thompson, Knight, Baker, Harris & Wright, all of Dallas, for appellee.

SPEER, Justice.

Appellant, City of Wichita Falls, instituted this suit against appellee, the Travelers Insurance Company, for recovery under and by virtue of a policy of insurance issued on April 24, 1933, designated as an automobile insurance policy No. F. A. 7479985, alleged to have been effective when the losses complained of were sustained.

Appellant's petition charges that appellee issued its contract and policy of insurance, by the terms of which it "bound and obligated itself to pay on behalf of the assured, the plaintiff herein, all sums which the assured shall become obligated to pay, by reason of the liability imposed upon it by law for damages because of bodily injury, including death at any time resulting therefrom, accidentally sustained by any person, or persons, and caused by the ownership, maintenance or use of the automobiles described and set forth in said contract, agreement and automobile insurance policy; except such bodily injury to an employee of the assured while engaged in the business of the assured (other than domestic employment) or in the operation, maintenance or repair of the automobile, or to any person to whom the assured may be held liable under any Workmen's Compensation Law."

Further allegations are made to the effect that by the terms of the contract, appellee obligated itself to investigate, compromise or make settlement of any resulting claims against appellant that the company should deem expedient. That the appellee obligated itself to defend, in the appellant's behalf and name, any suit seeking damages on account of any injuries so received. That one C. H. Phillips sustained an injury by one of appellant's insured trucks while the policy was in force; that he sued the city and, agreeable with the terms of the policy contract, the appellee defended the suit on behalf of and in the name of the city; that Phillips recovered a judgment for $4,000; that appeals were perfected and prosecuted by appellee and the city finally paid the judgment, with interest and costs. Prayer was for recovery of the amount paid by the city in satisfaction of the judgment.

Appellee answered by general denial, and by special pleas, that no liability existed on its part, for the reasons, (a) C. H. Phillips was, at the time of his injuries, an employee of the city, and (b) by the provisions of the policy, no liability was assumed or covered for injuries sustained by employees of the city, while in the discharge of their duties. It further answered that it participated in the defense of the Phillips case in the district court of Wichita County, under the terms of a special written contract between the company and the city, by which it was provided that the rights of the parties should in no way be prejudiced or changed because of such participation, but that all rights were specifically reserved to each.

The pleadings and exhibits are lengthy, but we believe we have stated enough of each to enable us to pass upon the points before us. With the issues thus joined, the case was tried to the court, without a jury. Judgment was entered for appellee insurance company, and the City of Wichita Falls has appealed.

Whether or not C. H. Phillips, who recovered judgment against the appellant for injuries sustained in 1933, was at the time an employee of the appellant, is the controlling question for determination here. If he was not such employee and not in the discharge of his duties as such when injured, as contended by appellant, it should have recovered in this suit; on the contrary, if he was an employee, the provisions of the insurance policy did not bind the appellee and the judgment was correct.

The dispute grows out of the conditions under which Phillips was working for appellant on the day of his injury. The testimony fairly reflects the facts to be as follows: Mrs. A. T. Willis testified that at the time Phillips was injured, she was the local representative of the Family Relief Committee, a local charitable organization. It was her duty to investigate applicants for relief, and if found to be employable, report them to Reconstruction Finance Corporation, a Federal relief organization commonly known as RFC. That RFC at that time was accepting witness' recommendations and issuing to employables, such as Phillips, a card showing them to be entitled to so many hours' work at a stipulated price. RFC had many such applicants to whom these cards were issued. Compensation for such laborers was paid by RFC out of Federal funds, when the card was returned showing that the number of days work allowed had been performed for some municipality, such as Water Improvement Districts, cities or a county. Each of the named municipalities was cooperating with RFC during the time by using as many of the men holding cards as they could find work for. On the day Phillips was injured, the City advised RFC it could use five men. That number, including Phillips, was advised to assemble at the City barn. There they were picked up by one of the city's trucks and driven to the south side of the city to work that day. There was no legal obligation upon the part of the men to accept the work tendered, nor for the city to accept the men and furnish work for them; that it was all done through a spirit of cooperation with the Federal Government to furnish relief to those in need.

Mr. Dobson testified that he had been street supervisor for appellant thirty-five years; that as such he hired all the men who did street work; it was his custom, when through with a man, to give him a time check and he was paid by the city;

that Phillips was not hired by him and that his name was never placed on a time sheet such as that kept for those employed by him to do regular work; but that Phillips did work for the city some in July, 1933; that witness had the responsibility of keeping the streets of the city; the labor was paid for out of city funds, included each year in a budget for that purpose; that with funds provided, he was enabled to take care of the streets in proper manner; that during July, 1933, Phillips was among a number of RFC men that witness found work for. He put these men to cutting weeds and grass on the streets and alleys, cleaning out culverts and whatever he could find for them to do. The work done was such as no provision was made for in the city's budget. The work done was not a total loss, but that it was such that he would not have had done by his regular crew. On the day Phillips was hurt, witness instructed the RFC office to have the five men report at the city barn, where he would have them picked up and taken to the place they were to work; that it was the custom with him to have men gather there for that purpose; when the day's work was done, he would send a city truck around to where they were working and haul them back to the barn. Witness directed the work to be done by the men, and appointed one as a foreman to see that his instructions were carried out. The men were placed at work on less used streets on the outlying parts of the city; that Phillips was doing that kind of work, under the direct supervision of the man witness had placed there, on the day of the injury. At about the time for the day's work to end, witness sent another regular employee of the city with one of its trucks out to haul the men back to the city barn. On the way to the barn, Phillips was injured. (He sued the city for damages, recovered and collected a judgment, out of which this suit grew, on the insurance policy.) Dobson further testified that so far as he knew, the city was under no obligation to give these RFC men work and it was only done to cooperate with the government; with this in view he was willing to find something for them to do; the work done by them was such as was very well to have done; he did not consider the effort wasted.

Under the facts enumerated, the appellant contends that Phillips was not in its employ at the time he was injured, but was an employee of RFC. In support of its contention, it cites and quotes at length from

a number of decisions; among them are: Dempster Mill Mfg. Co. v. Lester, Tex.Civ. App., 131 S.W.2d 254; Dempster Mill Mfg. Co. v. Wiley, Tex.Civ.App., 131 S.W.2d 257; Pittman v. City of Wichita Falls, Tex.Civ.App., 120 S.W.2d 847; 96 A.L.R. 1155; Shelton v. City of Greenville, 169 Tenn. 366, 87 S.W.2d 1016; Taylor v. City of Los Angeles, 29 Cal.App.2d 181, 84·P.2d 242; Reid v. Department of Labor & Industries, 194 Wash. 108, 77 P.2d 589; Ford v. Independent School District of Shenandoah, 223 Iowa 795, 273 N.W. 870; Hoover v. Independent School District, 220 Iowa 1364, 264 N.W. 611; City of Waco v. Hurst, Tex.Civ.App., 131 S.W.2d 745.

We have carefully read the cited cases, but the holdings are all based upon a different situation to that involved here. In those cases, some one of the governmental agencies, established for the purpose of furnishing employment to those found in need, had undertaken projects of their own, in some municipality, which when completed would inure to the benefit of the territory or district in which it was situated. The distinction between those cases and this one lies in such controlling conclusions expressed by the courts as in Shelton v. City of Greenville, supra [169 Tenn. 366, 87 S.W.2d 1017]: "By contributing a small part of the necessary expense and by contributing the services of a foreman, the City of Greenville was enabled to get the benefit of this project within its boundaries. It was not, however, city work of which the city had control, but, according to the agreement, the project was to be conducted 'under the rules and regulations of the Emergency Relief Administration.'" In Hoover v. Independent School District, supra, in holding that the injured party was not an employee of the district, the court reasoned [220 Iowa 1364, 264 N.W. 613]: "The workers were employed, told when and where to work, and paid for their services, by the Civil Works Administration. The contract of service which these workers had was entirely with the Civil Works Administration." Similar language is found in Dempster Mill Mfg. Co. v. Lester, supra. It is there said [131 S.W.2d 256]: "The Works Progress Administration selected and employed Lester, paid him his wages, determined the hours he should work, the character of work he should do, and how and where he should do it, and had the exclusive right to discharge him." Many authorities of other jurisdictions are there cited. Both in Ford v. Ind. School Dist. etc., supra, and Hoover v. Ind. School Dist., supra, it is shown· clearly that "Civil Works Administration", a Federal agency, had set up a definite project to be completed by the labor of men employed, paid and supervised by CWA for a school district, and it was held that the injured persons were not employees of the districts. The Texas cases cited are not different.

In the instant case, RFC had not undertaken to perform a given task like the building or repair of any project for the City of Wichita Falls, and thereby employ emergency labor for the consummation of that undertaking. So far as we are able to ascertain, the government had not at the time this case arose undertaken the "project" method as that described in the cases cited by appellant, and above reviewed. The means here employed were for RFC to ascertain who among those in need of relief were able to work, and then, as municipalities could absorb them by giving them useful work, that agency would pay the stipend promised on the card issued. RFC exercised no control, directly or indirectly, over the worker, of when, where or how he should work; nor the nature of the work he should do. The worker was under no obligation to accept from the city its terms, hours, or kind of work offered, nor was the city obligated to accept the worker nor to retain him for any specified time. True, the street supervisor said he had no authority to discharge Phillips, yet he was under no obligation to accept him from RFC and to give him work and had the authority to control how, when and where he worked, and it would follow that if Phillips failed or refused to do as ordered, his time card would not be approved by the city's supervisor and Phillips would not be paid by RFC; this is equivalent to the right to discharge Phillips. For some time prior to July, 1933, the Federal government had appropriated funds for distribution among the needy and placed those funds in the RFC agency for distribution, in the manner Phillips was receiving them, provided that some named municipality would give work to an employable, and the laborer would work and comply with the requirements of that municipality.

As before stated, the Federal government had not previously adopted the "project" method. RFC had no work to be done, was not employing labor for any purpose; it had not .set up any project to be done or task to be performed; it prescribed

none for Phillips; it exercised no management or control over him nor the work he was to do; it did not prescribe the number of hours he was to work each day, the nature of the work nor how it was to be performed. The RFC was no more than an agency set up by the Federal government for the distribution of the meager aid set apart for those who would accept employment from those agencies designated by the Federal government. Phillips could not receive this aid unless and until he did accept such employment and perform the tasks assigned him in a satisfactory manner to those agencies furnishing the work. The record in this case reflects unmistakably that the City of Wichita Falls was one of the class of municipalities designated by the government that could employ such workers as Phillips, and having done so, and supervised his work, controlled the time, place and manner of his work, and being satisfied with the duties performed, could have the benefit of his labors.

■ The fact that Phillips was not paid by the city, but by RFC, for the labors performed, is not controlling in the question of in whose employ was he at the time he was injured. The question has proven of much interest to us. We are unable to find any case by the appellate courts of this State where the precise question now confronting us has been decided. Looking to other jurisdictions, we find the Supreme Court of Utah has passed upon practically all of these questions, in Weber County-Ogden City Relief Committee v. Industrial Commission of Utah, 93 Utah 85, 71 P.2d 177, 182, in which case the court held that the injured party was an employee of the agency furnishing the "made work" under governmental distribution of relief. If it. could be said that the Utah case differs from the one before us, it is in the fact that the work assigned to the injured man was of such a nature that the city would have had its regular crew to perform had it not been done by relief workers. In this connection it was said by the court: "The work of eliminating the high place in Cahoon Street was such work as the street department of Ogden City ordinarily was engaged in and such that a proper maintenance of the city's streets would require to be done. The selection of this particular work as a 'make work' project was done by the city." It was further held that there was nothing to prevent the city from discontinuing the project at any time and thus terminate the services of those who worked thereon. In the instant case, the work assigned to Phillips and those given work by the city was of a nature that the regular crew would not have performed unless the city had plenty of money, as expressed by the superintendent; he said, however, it was work that was well to have done and was not wasted.

Other State Courts have discussed some of the points involved here, but they are not in complete harmony. They are cited by appellant as controlling here. In most instances the conclusions reached by those courts are bottomed upon issues not before us. One case in particular which we find frequently cited and followed is that of Vaivida v. City of Grand Rapids, 264 Mich. 204, 249 N.W. 826, 88 A.L.R. 707. There it is disclosed that the city was obligated by law to support indigent persons within its limits and the point is made that the work provided for those in need was just another means of awarding direct relief. In that case the laborers were paid by the city.

It is certain that Phillips was employed by either RFC or the appellant. If it could be said that he was employed by RFC then we ask, what was he employed to do? That agency had no work for him; never attempted to prescribe what he should do, nor how he should do it. The relation between Phillips and the city was contractual.

Irrespective of how poor, needy and worthy Phillips may have been, City of Wichita Falls was under no legal obligation to administer relief to him from the tax money in the treasury. It is doubtful if it could have done so had it tried. The whole set-up was one by which RFC could help him if appellant would employ him to do such work as it was willing to supervise and receive the benefits from. By Article 2351, R.C.S., it is made the duty of the respective counties of this State to care for indigent residents who are unable to support themselves.

■ If for any reason it could be said that Phillips was employed by RFC, a theory to which we do not adhere, then it follows from the facts before us that his injuries occurred while he was performing work for appellant and the borrowed servant rule would be applicable. Sherman & Redfield on Negligence, 5th Ed., sections 160 and 161.

It has been held that an employee who receives his pay from one railway company and his duties are such that he serves an-

other company also, if he receives an injury while serving the latter company having control and management of his services at the time, he is in the employ of the one having control of his work, and not the one from which he receives his wages. Missouri Pacific Ry. Co. v. Jones, 75 Tex. 151, 12 S.W. 972, 16 Am.St.Rep. 879; Gulf, C. & S. F. Ry. Co. v. Dorsey, 66 Tex. 148, 18 S.W. 444.

Discussing the principle involved in the borrowed servant rule (holding that it did not exist in those cases) in Dempster Mill Mfg. Co. v. Lester, Tex.Civ.App., 131 S.W. 2d 254, 256, writ dismissed, correct judgment, and City of Waco v. Hurst, Tex.Civ. App., 131 S.W.2d 745, having the same approval by the Supreme Court, this language was used: "This case does not come within the borrowed servant rule, so as to make Lester the servant of the defendant * * * for the simple reason that the servant at the time of his injury was performing labor which the Works Progress Administration had obligated itself to do * * *. In order for a laborer to come within the borrowed servant rule, he must be doing the work of the alleged borrower and not the work of the alleged lender. [Citing authorities]."

The principle is recognized in Western Union Tel. Co. v. Rust, 55 Tex.Civ.App. 359, 120 S.W. 249, writ refused, where it was held that where a servant has two masters, one general and the other special, and the latter has power of direction and control, the special master is liable for damages resulting from the servant's negligence.

■ We have concluded and so hold that Phillips was an employee of the appellant at the time he received an injury and appellant's proposition to the contrary and assignments of error upon which it is based are overruled.

Appellant's second proposition is that since Phillips' day's work had ended before he was injured, he was not in the discharge of his duties as an employee of the city at the time of the injury, and therefore the exception in the insurance policy is not applicable as contended for by the insurance company.

The evidence shows that when the street superintendent agreed to give Phillips work so that he could earn money promised by RFC he was instructed to report at the City barn on the morning he was to work;

that it was at the barns the superintendent took charge of the men and sent them out in a city truck to the place where they were to work during the day; when the day's work was over, Browning, a regular employee of the city, was sent out in a city truck to bring the men back, and that it was on the way back to the barns that Phillips was injured. Browning testified that he was in the regular employment of the city, before and at the time Phillips was injured; his duties as such truck driver, among other things, was to haul men who were working for the city to and from their jobs; he had instructions to do this. He was performing this duty when Phillips was injured. It does not clearly appear what caused Phillips' injuries, but he was riding in the truck on his way back to the city barns when the accident happened.

Appellant argues that Phillips' work for the day was over at the time of his injuries, and that he was a mile or more from the place where he had worked when injured, and therefore he was not, at the time of the injury, in the employ of the city.

Phillips sued the city for the damages sustained and recovered judgment; an appeal was perfected to this court by the city and the judgment affirmed, City of Wichita Falls v. Phillips, Tex.Civ.App., 87 S.W.2d 544. Application for writ of error was denied by the Supreme Court. Upon the hearing of that case in this court, it was contended by the city that Phillips was injured because of the negligence of a fellow servant, one Browning, the driver of the truck, but it was held that because no such issue was raised by the pleadings, it could not be considered. If Phillips was not an employee at the time of his injuries, he would have been at most a guest of Browning, the driver of the truck. The provisions of Article 6701b, Vernon's Tex. Civ.St., which relate to liability for injuries to gratuitous guests while riding in an automobile, were not invoked in the trial of that case. The issues upon which the case was tried were alleged to be the negligence of the city.

■ We think the record before us shows that in connection with the work the city was giving Phillips, that it undertook to give him free transportation from the city barns to the place of work and return. The city had not fully discharged that obligation until the truck had arrived at the barns. Watts v. Continental Cas-

ualty Co., Tex.Com.App., 18 S.W.2d 591; Jones v. Casualty Reciprocal Exchange, Tex.Civ.App., 250 S.W. 1073, writ refused; Western Indemnity Co. v. Leonard, Tex. Com.App., 248 S.W. 655.

Appellant cites us to the cases of Smith v. Texas Employers' Ins. Ass'n, 129 Tex. 573, 105 S.W.2d 192 and Banks v. Commercial Standard Ins. Co., Tex.Civ.App., 78 S.W.2d 660, writ dismissed. The Smith case, supra, was a workmen's compensation case and came within the meaning of terms of that statute, Article 8306 et seq., Vernon's Texas Civil Statutes, and its several sections. It was there held that in addition to showing as a right to recover that he was injured while he was engaged in or about the furtherance of the employer's business, the plaintiff must show that his injury was of such a kind and character as had to do with and originated in the employer's work, trade, business or profession. It is also there stated that as a general rule an employee could not recover for injuries sustained while going to or returning from the place of his employment, except in certain particular cases. These exceptions are shown to be those which are not occasioned by the risks taken by employees on the streets and highways which are common to the entire public; but are injuries sustained by them going to and coming from their places of employment when that hazard has "to do with and originated in the work, business, trade or profession of the employer." [129 Tex. 573, 105 S.W.2d 193.] If the test made in such cases is to be applied here, then we think that even though Phillips was injured while returning to the city barns after he had finished his day's work, his return there being a part of his contract of employment, it had to do with and originated in the work, business, trade or profession of his employer, the appellant in this instance.

We are likewise cited to the case of American Indemnity Co. v. Dinkins, Tex. Civ.App., 211 S.W. 949, writ refused, in which it was held that an employee was not in the course of his employment when riding his motorcycle on a public street at night, on his way home from the refinery at which he had worked. He had punched the clock for the end of the day and was in the act of going home. It appears that the employer exercised no control over the employee after he checked out for the day. The court said that there was no obligation on the part of any one to see that Dinkins reached his home in safety; that having received the injury on his way home, the relation of master and servant between him and his employer did not exist at that time. We see no conflict in the two lines of decisions under the facts involved in each.

The remaining propositions 3 and 4 raise the questions (a) that appellee having defended the suit by Phillips against the city, it thereby conceded liability and was bound by the judgment rendered, and (b) the reservation or non-waiver agreement was void and contrary to public policy.

There is a sheaf of correspondence in the record between attorneys for the city and the insurance company, which passed after Phillips' injury and prior to the trial of that case. The substance of contentions made by attorneys for the insurance company is that Phillips was an employee of the city at the time of his injuries and under the provisions of the policy the company was not liable, but that in view of the contingencies that might arise in the future, those attorneys would aid the city's counsel in defending the suit under an agreement that they should not waive the rights of the company in doing so. Pursuant to the correspondence, the agreement was entered into. It recites the issuance of the policy, referring to the provisions by which the company contracted to indemnify the city, and the exception as to injuries sustained by an employee; the contention made by the parties relating to the facts as disclosed by the investigation made by the company and concluded with the following paragraph: "Now, Therefore, the City of Wichita Falls, and the Travelers Insurance Company, do hereby covenant and agree among themselves, that in consideration of the Travelers Insurance Company furnishing its investigation and attorneys in the defense of the above numbered and styled suit pending in the 30th District Court of Wichita County, Texas, and that they do hereby agree that in furnishing its attorneys and participating in the trial of the above mentioned suit, such acts and conduct shall not be construed by either party as a waiver of any of the rights and defenses of said The Travelers Insurance Company under said above numbered indemnity contract and policy, and neither shall any of the rights of the City of Wichita Falls under said contract, in accordance with its terms and

provisions, be jeopardized, except the City of Wichita Falls foregoes and waives any right or rights or privileges which it may have or claim to assert that any of the rights and defenses of The Travelers Insurance Company under said contract are waived or jeopardized in anywise whatsoever, it being the intention of the City of Wichita Falls and The Travelers Insurance Company that they each might participate in the investigation and defense of the claim of said C. H. Phillips and of the suit brought and instituted by him fully and completely and without waiving any of the rights of either party to said above numbered contract and reserving the question of liability as between the City of Wichita Falls and The Travelers Insurance Company to be determined at a later date, without prejudice to the rights of either party, except as herein reserved."

The policy contract between appellant and appellee was introduced in evidence; it is lengthy, containing many provisions which conditionally affect the rights of the parties. A simplified form of the controlling features of the contract is embraced in the quoted part of appellant's petition in the first part of this opinion.

Appellee had issued its indemnity contract of insurance to appellant prior to the happening of the events upon which this suit is based. Appellee had obligated itself to indemnify the appellant against losses occasioned by accidental injuries to other persons resulting from the handling of appellant's automobiles; excepting, among other classes, bodily injuries to an employee of the appellant while engaged in the business of the assured.

A further stipulation in the policy provided that appellee would "defend in his (City of Wichita Falls) name and behalf any suit against the assured seeking damages on account of such injury or destruction, even if such suit is groundless, false or fraudulent."

The uncontradicted evidence shows that appellant was sued by Phillips for the alleged injury sustained and the citation issued in the cause was promptly sent to appellee for attention. The company made an investigation and concluded that Phillips was an employee in the discharge of his duties when injured and because of the exception of that class of injury in the policy the appellee was not liable to appellant for any services in connection with the then pending suit. The long drawn

out correspondence between the attorneys found in the record bears on this phase of the case. The non-waiver agreement subsequently signed and partially copied herein was the result of that correspondence.

The attorneys for the respective parties who wrote the letters testified upon the hearing of this case. The effect of the testimony given by appellant's attorneys was that appellee's attorneys assumed the entire management and control of the trial of the Phillips case; while that of appellee's attorneys was substantially that they only participated and cooperated with appellant's attorneys in the trial, for the reasons set out in the non-waiver agreement.

Appellant contends, based upon its theory as testified to by its attorneys, that appellee waived its rights and was estopped to deny its liability under the policy contract; and further contends that the so called non-waiver agreement was void as against public policy.

The testimony given by the respective attorneys is in fact about the only controverted fact issue in the record. The trial court found in favor of the contention of appellee's counsel; he found as a fact as follows: "(5) The court further finds that thereafter (after the non-waiver agreement was signed) that the City of Wichita Falls and The Travelers Insurance Company participated jointly and cooperatively in the defense of said suit brought by C. H. Phillips against the City of Wichita Falls."

Appellant challenged that finding of the court as being unsupported by the evidence. As stated, the testimony was conflicting and we find sufficient evidence in the record of probative force to support the conclusion reached by the court, and his findings thereon are binding upon this court. 3 Tex.Jur., page 1102, sect. 771; 41 Tex.Jur., page 1246, sect. 378; and many cases decided since the rules cited were written, but we pretermit citing them here.

It occurs to us that where a dispute arises between parties, as was done in this case, going to the liability of one or the other, and the parties fairly enter into an agreement to work out preliminary matters, even by the joint trial of a case which may or may not disclose liability or non-liability, they would have the right, as was done here, to do so without waiving their respective rights to rely upon the provisions of the original contract. It will

178

be observed that by the terms of that part of the agreement above quoted, in connection with the obligation assumed by the City of Wichita Falls, it is said: " * * And neither shall any of the rights of the City of Wichita Falls under said contract, in accordance with its terms and provisions, be jeopardized, *except the City of Wichita Falls foregoes and waives any right or rights or priviliges which it may have or claim to assert that any of the rights and defenses of the Travelers Insurance Company under said contract are waived or jeopardized in anywise whatsoever* * * *." (Italics ours.) By the propositions under consideration, we find appellant asserting that appellee did waive its rights to claim its exemption from liability under the terms of the policy contract, when by the terms of the agreement appellant bound itself not to do so. Our courts have uniformly held that non-waiver agreements executed by the insured and insurer, previous to an investigation to be made, by which the parties may proceed without waiving their rights, are binding on the parties. Commercial Standard Ins. Co. v. Harper, 129 Tex. 249, 103 S.W.2d 143, 110 A.L.R. 529; Home Insurance Co. of N. Y. v. Lake Dallas Gin Co., 127 Tex. 479, 93 S.W.2d 388.

The above cases are not as broad in their scope as the rule here contended for by appellee, but they are analogous in principle. Appellant cites us to Leap v. Braziel, Tex.Civ.App., 93 S.W.2d 1213, reformed (on a point not involved here) and affirmed in Tex.Com.App., 121 S.W.2d 334; Ferris v. Southern Underwriters, Tex.Civ.App., 109 S.W.2d 223, writ refused; and Montgomery v. Utilities Ins. Co., Tex.Civ.App., 117 S.W.2d 486. The first two cases cited hold that under provisions like those found in the policy contract before us, where the company assumed the responsibility for the management and control of the litigation, those acts would estop it from thereafter asserting that it had no interest in the suit, and that it could not be heard to say that it was not bound by the judgment. However, there was no such non-waiver agreement entered into between the parties in those cases as the one we have in the instant case.

■ Montgomery v. Utilities Ins. Co., supra, was a controversy between Montgomery, the injured person, not a party to the insurance policy, and the insurance company. The company had issued its policy indemnifying the county against losses sustained growing out of the use of its automobiles, except to employees, similar to the policy in the instant case. One Smith, an employee, was the driver of a county truck, and Montgomery, another employee, was injured. He sued Smith, alleging negligence, resulting in the accident. Because of the existing policy of insurance to the county, the insurance company took cognizance of a possible contention that it was liable for indemnity and negotiated with Smith, the defendant, and entered into an agreement in which the existing facts were set out. There was a denial of liability of the company contained in the instrument, but the company agreed to defend the suit for Smith, provided that its acts should not be construed to mean that it had waived any of its rights and defenses under the policy; the agreement contained substantially all the reservations of rights to both parties found in the one before us. The plaintiff, Montgomery, recovered judgment against Smith, and later attempted to collect from the insurance company, not a party to the suit, claiming that because the company had defended the suit, it was in fact a party and thereby acknowledged its interest in the outcome. When the company refused to pay, the suit was instituted by Montgomery against it. The appellate court recognized that the company was not liable to Montgomery under the terms of the policy, but held it responsible because of its assumption of the control and management of Smith's defense, refusing to recognize the terms of the non-waiver agreement. The court held that the non-waiver agreement was void because it was an attempt upon the part of the company to obligate itself to practice law by making the defense for Smith. We are not inclined to place such a construction upon the non-waiver agreement before us. The company in this case proposed to furnish its attorneys to make the defense conditioned as set out in the instrument. We note that the Supreme Court has granted a writ of error in the Montgomery case, supra, based upon four assignments of error which embrace much that is contended for by appellee in the instant case. Because of the difference between the two cases and the conclusions reached by the Beaumont Court, we are not inclined to strike down the non-waiver agreement between City of Wichita Falls

and Travelers Insurance Company, the parties to the insurance contract, when it appears to have been fairly entered into by them.

We have carefully studied the entire record before us, have read all of the authorities cited to which we have access and have concluded that the trial court reached a proper solution of the issues made. Finding no errors presented which would require a reversal of the judgment rendered, it is affirmed.

### On Motion for Rehearing.

Appellant, City of Wichita Falls, has filed its motion for rehearing in this cause, in which it is earnestly insisted that we were in error in the conclusions reached and expressed in our original opinion.

We are requested to make further findings of fact, based upon the testimony of named witnesses. It is claimed that our statement in certain respects does not properly reflect the testimony given by those witnesses. Obviously, it would be impracticable for an appellate court to relate in an opinion all the details, conflicts and immaterial parts of evidence set out by the statement of facts.

Our attention is directed especially to parts of the testimony given by Mrs. A. T. Willis, which it is contended refers to "projects" at which such persons as Phillips worked. It is true the witness was asked this question: "When the (work) card was issued did you direct them where to go?" She answered: "The RFC did that through these projects they worked on." However, counsel apparently took issue with the witness by reminding her that there were no "projects" at that time, and the witness countered with a question of her own, by asking counsel, "Wouldn't that be called a project?" Her inquiry evidently referred to the transaction she had had with the applicant and her recommendation to RFC that a man was able to work and RFC issued the work card, entitling the applicant to compensation if he should find work with either of the agencies recommended by the federal government. The materiality of that part of the testimony is made applicable to what we have said in the opinion in regard to "projects" sponsored by federal agencies.

To construe those parts of Mrs. Willis' testimony above mentioned, in their most favorable light, in support of appellant's contention, as compared to other testimony given by her and referred to in the opinion, only a fact question would arise, and this was to be passed upon by the court sitting in lieu of a jury. New St. Anthony Hotel Co. v. Pryor, Tex.Civ.App., 132 S.W.2d 620, writ refused. The judgment entered was against appellant, and this was equivalent to a finding of fact by the court against the contention of appellant in the respect complained of.

In the motion, appellant attempts to quote a paragraph from near the middle of the original opinion, which begins with these words: "Phillips sued the city for the damages sustained and recovered judgment", etc., and insisted that what we said has no bearing on the case and has added: "As we see it, the above quotation from the opinion of this court is merely a criticism of the lawyers who tried the Phillips case."

First of all, we desire to say that such a motive imputed to us certainly cannot be drawn from the language used, and further, that such an idea did not enter the mind of any member of the court; we each hold counsel in the highest esteem, both in ability and integrity.

Again we have studied the paragraph complained of, and with our attention drawn to it by the motion, we cannot see how the language used could be so construed. In a general sense, any time a court differs with counsel it could be said that it is a reflection upon, or criticism of, counsel's views, but certainly no such motive should be imputed to a court.

In the next place, the manner in which our opinion is attempted to be quoted in the motion, the expression used by us relating to the "guest statute", would be meaningless, or at least would be the reverse of what we conceive to be the law. However, we know that counsel did not purposely misquote what we said in the opinion. We said, "If Phillips was not an employee", etc., whereas we are quoted as having said, "If Phillips was an employee", and so on.

As we view the case, it was very essential that we refer to the former case as we did. Appellant's cause of action was dependent upon that case; it plead it as ground of recovery upon the insurance policy. The appellee cited the opinion by this court as an authority on one point, but we did not think it supported the contention made and therefore did not comment thereon.

Our reference in the opinion to what is commonly known as the "guest statute", was prompted solely by the thought that if Phillips when injured was not an employee, he was a gratuitous guest of the driver of the city's truck. The case was tried upon the theory that he was an employee, hence nobody contended that he was simply a guest.

From the record in this case, it is apparent that counsel for appellant feels that counsel for appellee, in the instant case, so conducted the original case of City of Wichita Falls v. Phillips, supra, as to make a defense to the present case. Whether or not there was a joint and cooperative participation in the original case by counsel for the city and that of the insurance company was determined by the court against appellant. Under the evidence in the case, that finding is binding on us.

These conclusions have been written for the purpose of assuring counsel that no reflection upon or criticism of them was intended by the court. We are yet unable to perceive how our language could be so construed.

We think the disposition made of the appeal in the original opinion is correct, and with the above explanations, the motion is overruled.